In re William Bruce ARNETT, Petitioner.

No. 86–3480.

United States Court of Appeals, Eleventh Circuit.

Nov. 7, 1986.

Alvin E. Entin, Entin, Schwartz, Barbakoff & Schwartz, N. Miami Beach, Fla., for petitioner.

W. Thomas Dillard, U.S. Atty., Barbara D. Schwartz, Asst. U.S. Atty., Tallahassee, Fla.

Before TJOFLAT, HILL and VANCE, Circuit Judges.

BY THE COURT:

On May 20, 1986, petitioner Arnett pleaded guilty to a single count of possession of marijuana and cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. Arnett offered his guilty plea pursuant to a written plea agreement reached with the Office of the United States Attorney for the Northern District of Florida. The agreement included a provision that Arnett would forfeit $3,000 found on his person at the time of his arrest. Prior to sentencing, but after his plea was accepted, the government served on Arnett a Complaint for Forfeiture In Rem, seeking forfeiture of his house and farm. Petitioner argues that this attempt to gain forfeiture of his house and farm violates the terms of his plea agreement. We agree.

I.

Arnett seeks specific performance of his plea agreement, or, alternatively, to vacate his plea of guilty. At the district court hearing, testimony establishing the following facts was presented. This testimony was not contradicted.

Petitioner's attorney, Alvin Entin, and Barbara Schwartz of the United States Attorney's Office negotiated the plea agreement over a two to three day period. During the course of these negotiations, Schwartz stated that the only forfeiture sought by the government was the $3,000 on Arnett's person at the time of his arrest. When Entin specifically asked about the farm, Schwartz responded that the United States Attorney's office had "no interest" in the farm. Schwartz noted, however, that she could not speak for the Internal Revenue Service. Entin developed an understanding based upon these conversations that the United States Attorney had agreed not to move against the petitioner's house and farm. At the close of the negotiations, Entin prepared the documents memorializing Arnett's plea agreement with the government. In drafting the forfeiture provision, Entin intended to limit Arnett's forfeitures to $3,000 and to prohibit any other forfeiture actions. This clause read:

## FORFEITURES

The defendant Arnett agrees to the forfeiture of the United States of the Three Thousand dollars on his person at the time of his arrest.

This is the entire agreement between defendant William Bruce Arnett, and the prosecution, and it has been entered into freely, voluntarily and upon advice of counsel.

This forfeiture provision was a significant factor in Arnett's decision to accept the plea agreement. Arnett and his attorney specifically discussed the meaning of this section of the agreement. Entin told petitioner that the agreement provided that the $3,000 would be the sole forfeiture sought by the government. Arnett stated in these discussions with his attorney that the government's willingness to forego forfeiture of his North Carolina property was one of his principal reasons for his entering into the plea agreement.[1]

The district court carefully examined the petitioner before accepting his plea. Answering questions under oath, Arnett stated that he agreed to the terms of the written plea agreement and that he entered into it knowingly and without coercion. He and his attorney confirmed that the agreement contained all the understandings and promises he had received from the United States Attorney. Arnett also engaged in the following exchange with the judge:

The Court: Do you, sir, Mr. Arnett, understand the terms and provisions and the matters set forth in that written agreement?

Mr. Arnett: Yes, sir.

The Court: Do you understand that it purports to settle the differences, all of your differences with the United States as it relates to the charges that are set forth in this indictment?

Mr. Arnett: Yes, sir.

The Court: And that it contains what you're willing to do or what may happen to you as a result of your plea and what the government is going to do or refrain from doing in exchange for your plea; do you understand that?

Mr. Arnett: Yes, sir.

## II.

■■■ *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), provides the starting point for analyzing difficult issues involving plea bargains. *Santobello* teaches that when guilty pleas "rest in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262, 92 S.Ct. at 499. The court must use objective standards to determine the disputed terms of a plea agreement. *United States v. Travis*, 735 F.2d 1129, 1132 (9th Cir.1984). The court must decide whether the government's actions are inconsistent with what

---

1. The circumstances of this case provide unusually reliable information about the relevant discussions. Because of the number of defendants, other attorneys overheard many of these conversations between Entin and Schwartz and between Entin and Arnett.

the defendant reasonably understood when he entered his guilty plea. *Johnson v. Beto,* 466 F.2d 478, 480 (5th Cir.1972); *United States v. Crusco,* 536 F.2d 21, 27 (3d Cir.1976).

It is clear from the record that Arnett believed that his plea agreement prevented the government from seeking any forfeitures beyond the $3,000 and that this belief was reasonable under the circumstances. According to uncontroverted testimony, the Assistant United States Attorney stated that her office had no interest in the farm. She led Arnett's counsel to believe that their oral understanding limited the government to the $3,000 and prohibited further action against Arnett's property. The written agreement may have been inartfully drafted, but Arnett and his attorney could reasonably perceive it as limiting any forfeitures to $3,000. This limitation would be consistent with their oral understanding with Schwartz. Although the written plea agreement does not address the key question of further forfeitures, Arnett's attorney explained that Schwartz's inability to bind the IRS necessitated this silence. At no time did the United States Attorney's Office indicate to Arnett or his representatives that the written agreement changed their previous oral understanding. Without such an express warning, it was reasonable for Arnett to rely on the original oral understanding which, in return for his guilty plea, safeguarded his farm.

■ The government asserts that we must permit its action against the farm since the written plea agreement does not explicitly prohibit a later forfeiture action. We cannot accept such a hyper-technical reading of the written agreement. A guilty plea is more than an admission of past conduct; it is a waiver of the right to trial before a judge or jury. To constitute a valid waiver of substantial constitutional rights, a guilty plea must represent a voluntary, knowing, intelligent act, and must be offered with sufficient awareness of the likely consequences. *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970); *United States*

*v. French,* 719 F.2d 387, 390 (11th Cir. 1983), *cert. denied,* 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984). *See* Fed.R. Crim.P. 11. When viewed against the background of the negotiations, the written plea agreement cannot support a valid waiver of Arnett's constitutional rights because it does not sufficiently warn him that he may lose his farm. The written agreement nowhere states that a further forfeiture will be permitted: it specifies an agreed upon forfeiture, but does not reserve any right in the government to take further, similar action. The government urges an interpretation of the plea agreement which directly contradicts the oral understanding. Such a delicate parsing of the written language cannot support a finding that the defendant has forthrightly waived his constitutional rights as the law requires. "A plea agreement is not an appropriate context for the government to resort to a rigidly literal approach in the construction of language." *United States v. Bowler,* 585 F.2d 851, 854 (7th Cir.1978). *See, e.g., United States v. Harvey,* 791 F.2d 294, 303 (4th Cir.1986) (ambiguous plea agreement "must be read against the Government"); *United States v. Crusco,* 536 F.2d 21, 26 (3d Cir.1976) ("strict and narrow interpretation of [government's] commitment is untenable"); *Correale v. United States,* 479 F.2d 944, 947 (1st Cir. 1973) (government held to "most meticulous standards of both promise and performance").

The government also contends that Arnett's statements at the time he entered his plea conclusively establish an understanding that the government could take any action not expressly prohibited by the written plea agreement. The district court agreed, relying upon *United States v. Hauring,* 790 F.2d 1570 (11th Cir.1986). *Hauring* places a heavy burden on a defendant "asserting the existence of a bargain outside the record and contrary to his own statements under oath." *Id.* 1571.

We fail to see the contradiction between Arnett's statements under oath and his understanding of his bargain with the

government. The government points to Arnett's declarations that the written plea agreement contained all the government's promises and that no other understandings existed. Arnett, however, believed that the written plea agreement contained the government's promise not to seek further forfeitures. His earlier answers at the hearing reflect his understanding that his plea agreement *"settle[d] the differences, all the differences with the United States"* and contained *"... what the government is going to do or refrain from doing in exchange for [his] plea."* In these circumstances, Arnett's statements under oath are consistent with an agreement restricting further forfeitures.

### III.

■■ This circuit follows the principles enunciated in *Santobello* by requiring that the government adhere strictly to the terms of plea agreements. *United States v. Avery,* 621 F.2d 214, 216 (5th Cir.1980), *reh'g denied,* 632 F.2d 894 (1980), *cert. denied,* 450 U.S. 933, 101 S.Ct. 1396, 67 L.Ed.2d 367 (1981); *United States v. Shanahan,* 574 F.2d 1228 (5th Cir.1978). We hold that the government breached the terms of the plea agreement by seeking forfeiture of Arnett's farm. Where the government has not honored a plea agreement, the fashioning of an appropriate remedy is left to the sound discretion of the court. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Geisser v. United States,* 513 F.2d 862 (5th Cir.1975). Arnett has suffered no prejudice to date from the filing of the complaint for forfeiture of his farm. It is appropriate, therefore, to allow the United States Attorney to cure the breach of the plea bargain by withdrawing the forfeiture action against Arnett's house and farm. Should the government elect to pursue its action for forfeiture, the district court is directed to grant Arnett's motion to vacate his plea.

The petition for mandamus is GRANTED. This opinion shall serve as the writ and its formal issuance is not required.