UNITED STATES of America, Plaintiff,

v.

**CERTAIN REAL PROPERTY AND PREMISES KNOWN AS 3840 JACKIE DRIVE, CINCINNATI, OHIO,** Defendant,

Jeffrey W. Bottom, Claimant.

Civ. A. No. C–1–90–702.

United States District Court,
S.D. Ohio, W.D.

Aug. 25, 1992.

Nicholas John Pantel, Kathleen Mary Brinkman, U.S. Dept. of Justice, Cincinnati, Ohio, for U.S.

. James Allen Shriver, Clermont County Prosecutor's Office, Batavia, Ohio, for Treasurer of Clermont County Ohio.

Peter William Swenty, Cincinnati, Ohio, for Jeffrey W. Bottom.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

SHERMAN, United States Magistrate Judge.

This is a 21 U.S.C. § 881 civil forfeiture action in which both parties have consented to entry of final judgment by a United States Magistrate Judge. Doc. 14. Plaintiff, the United States (hereinafter "government"), seeks the forfeiture of claimant Jeffrey Bottom's home on the theory that the residence was used to facilitate the sale of cocaine. To that end, the government has filed a motion for summary judgment and decree of forfeiture (doc. 19), to which Bottom has submitted a memorandum in opposition (doc. 23). Having reviewed these documents in light of the summary judgment standard set forth in *Goldstein v. D.D.B. Needham Worldwide, Inc.*, 740 F.Supp. 461, 463–65 (S.D. Ohio 1990), the Court finds two issues presented: first, is it genuinely disputed whether the government is legally entitled to the forfeiture of Bottom's home?; second, if forfeiture is permitted, does the timing of the government's notice to Bottom, or the manner in which that notice was delivered to him, alter the result? For the reasons that follow, the Court answers both questions in the negative, and grants the subject motion.

### I.

In early August, 1990, agents of the Clermont County, Ohio Narcotics Unit, acting on a tip received from a federal Drug Enforcement Agency (DEA) informant, began to investigate Bottom as a possible cocaine trafficker. The informant confided that Bottom was soon to receive an unspecified amount of cocaine from Florida. On August 10, 1990, the Clermont County agents, while conducting surveillance of Bottom, saw him meet in a convenience store parking lot with the driver of a pickup truck licensed in the State of Florida. After the pickup truck driver accompanied Bottom to his residence, the agents obtained a warrant to search that real property. During the resulting authorized search

the agents found, *inter alia*, 453 grams of cocaine and cash totalling $18,920.00, $9,520.00 of which belonged to Bottom.[1] *See United States v. Bottom*, No. 91–3151, 1991 WL 224094, at *1, 1991 U.S.App. LEXIS 26362, at *3 (6th Cir. Oct. 31, 1991) [947 F.2d 946 (table)]. ·

On August 14, 1990, Bottom was charged in a Southern District of Ohio two-count indictment with using a telephone to facilitate the distribution of cocaine in violation of 21 U.S.C. § 843(b), and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). The indictment made reference to forfeiture of the $18,-920.00 in cash, but not to the forfeiture of any other property, whether real or personal. Doc. 23, exb. A (indictment) at 2. Bottom initially plead not guilty to both counts. He changed his plea to guilty, however, after his motion to suppress evidence was denied.[2] He was eventually sentenced to forty-six months of incarceration and three years of supervised release. *United States v. Bottom*, No. CR–1–90–89–01, doc. 20 at 1 (S.D. Ohio Feb. 8, 1991). ·

Prior to the Court's acceptance of his guilty plea on October 25, 1990, Bottom's counsel, Peter Swenty, discussed on two occasions with the Assistant United States Attorney (AUSA) prosecuting the case whether Bottom "would cooperate with the government in assisting with the apprehension and conviction of certain other individuals." Doc. 23, exb. B (Swenty aff.) at 1. Bottom declined to do so. According to Mr. Swenty, neither the AUSA, nor other officials, then advised him that the government was considering the forfeiture of any property besides the $18,920.00 found in Bottom's home the night of his arrest. In fact, the AUSA apparently did not orally notify Messrs. Swenty and Bottom of the instant, civil *in rem* action until one hour *after* the Court's acceptance of Bottom's guilty plea. As Mr. Swenty explains, the

AUSA then "told [me] words to the effect that: 'that's what can happen if you don't cooperate [with us].'" *Id.* at 2. Although Mr. Swenty states in his affidavit that Bottom might have elected to go to trial had he known, before pleading guilty, of the government's true intent to forfeit his home, *see id.* at 3, Bottom made no efforts to revoke his guilty plea prior to sentencing.

## II.

The Court first addresses the merits of the government's motion. 21 U.S.C. § 881(a)(7) authorizes the forfeiture of real property "which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of [federal narcotics laws] punishable by more than one year's imprisonment...." To satisfy § 881, "the government 'must establish probable cause to believe that a substantial connection exits between the property to be forfeited and the illegal exchange of a controlled substance.'" *United States v. $67,220.00 in U.S. Currency*, 957 F.2d 280, 283 (6th Cir.1992). "Probable cause means [a] reasonable ground for belief of guilt, supported by less than *prima facie* proof but more than mere suspicion." *Id.* at 284 (internal quotations deleted). The existence of probable cause may be demonstrated by examining evidence developed after the seizure in question, provided the government's forfeiture proceedings were not begun in bad faith or pursuant to "wild allegations based on the hope that something will turn up...." *Id.* Once probable cause is shown, the burden shifts to the claimant (*i.e.*, Bottom) to prove his innocent ownership of the property in question. *Id.* at 287.

Bottom does not dispute that § 881(a)(7) is here satisfied, *see* doc. 23 at 1, and the Court agrees that the government has

---

**1.** The remaining $9,400 belonged to Bottom's co-defendant, Richard Clines. Doc. 23, exb. A (indictment) at 2. Mr. Clines is not a party to this civil proceeding.

**2.** Technically, Bottom's guilty plea was conditioned on his right to appeal the denial of his

motion to suppress. *See United States v. Bottom*, No. CR–1–90–89–1, docs. 14–16 (S.D. Ohio Oct. 29, 1990); *see also* transcript of Oct. 25, 1990 district court proceedings (attached as appendix) at 686–687. On appeal, the Sixth Circuit affirmed the denial of the motion. *United States v. Bottom, supra*, 1991 WL 224094, at *2,

shown the required probable cause. Bottom, for example, is the sole owner of the subject real property. Doc. 6 at 1. In addition, each of the two narcotic crimes to which he plead guilty are felonies. *See* 21 U.S.C. §§ 841(b), 843(c); *see also* CR–1–90–89–1, doc. 14 (reflecting Bottom's guilty plea to both indictment counts). Finally, probable cause is amply shown by the cocaine found at Bottom's residence during the search, as addressed in an 'affidavit in support of forfeiture' by DEA agent Michael Fieler, doc. 1, exb. A at 1; by Bottom's admission to paragraph eleven of the government's complaint, *see* doc. 7 at 2; and by Bottom's guilty plea itself, appendix at 690–691. *United States v. $83,320.00 in U.S. Currency and $40.00 in Can. Currency,* 682 F.2d 573, 577 (6th Cir.1982); *United States v. 228 Acres of Land and Dwelling located on Whites Hill Rd., Chester, Vt.,* 916 F.2d 808, 813–14 (2d Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991); *United States v. 77 Walnut St., Brookline, Mass.,* 923 F.2d 840 (table), 1990 U.S.App. LEXIS 22457, at *8 (1st Cir.1990). Forfeiture is therefore appropriate, provided Bottom's defenses lack merit.

### III.

#### A

■ To satisfy his shifting burden of proof, Bottom raises two arguments. First, he contends that the government's failure to notify him, prior to the taking of his plea, that property besides his $9,520 in cash might be forfeited, "lulled" him "into a false sense of security that the real estate would not be the subject of a subsequent forfeiture proceeding." Doc. 23 at 2. Bottom suggests in that regard that the government had many opportunities to provide such notice—for example, in his indictment, or during his counsel's two meetings with the AUSA—and that, because notice was not afforded him in a timely manner, it was reasonable for him to believe that his guilty plea "settled all matters between himself and the government." *Id.* at 3.

1991 U.S.App. LEXIS 26362, at *5–6 [947 F.2d 946 (table) ].

**3.** The other case cited by Bottom, *State v. Casalicchio,* 58 Ohio St.3d 178, 569 N.E.2d 916 (1991),

Although the Sixth Circuit has found that a criminal defendant need not be informed of the collateral consequences of his guilty plea, *see, e.g., Adams v. McMackin,* No. 90–3795, 1991 WL 39683, at *1, 1991 U.S.App. LEXIS 5050, at *4 (6th Cir. Mar. 21, 1991) [928 F.2d 1132 (table) ], it has yet to address whether a civil forfeiture is such a collateral proceeding. The Second and Tenth Circuits have already so held, however, both concluding that the government's failure to inform a defendant that civil forfeiture proceedings may later occur does not tarnish the voluntariness of the defendant's plea. *See Harris v. Allen,* 929 F.2d 560, 562 (10th Cir.1991); *United States v. United States Currency in the Amount of $228,536.00,* 895 F.2d 908, 914–16 (2d Cir.), *cert. denied,* 495 U.S. 958, 110 S.Ct. 2564, 109 L.Ed.2d 747 (1990); *see also United States v. King,* 618 F.2d 550, 552 (9th Cir.1980) (citing other examples of collateral consequences, besides civil forfeiture, which a defendant need not be made aware of). The Court finds this reasoning persuasive, especially in light of Bottom's admission—made during the taking of his plea—that no other agreements had been made between himself and the government. App. at 12–13. There is thus no question that Bottom's plea was voluntary. *See id.* at 13–14, 17. Bottom's claim that his plea "settled all matters" with the government does not withstand review because, as both parties agree, Bottom plead guilty without first having entered into a written or oral plea agreement. Doc. 7 at 4; doc. 19 at 4; app. at 2, 12. Thus, he cannot now complain that the government breached its supposed agreement with him. For that reason, and because there is no suggestion in the record that the AUSA mislead Messrs. Bottom or Swenty as to his true intent, Bottom's reliance upon *In re Arnett,* 804 F.2d 1200 (11th Cir.1986), an Eleventh Circuit case requiring prosecutors to honor their oral promises not to initiate forfeiture proceedings when those promises induce guilty pleas, is misplaced.[3]

is distinguishable not only because it involved an interpretation of state, not federal forfeiture

Bottom's first argument fails in another respect, for it is also undisputed that, once he was informed of the government's intent to forfeit his home, he made no efforts to revoke his plea. His suggestion that the timing of the government's forfeiture notice somehow restricted him from proceeding to trial is thus simply not supported by the facts. Even if that suggestion were so supported, it would be unavailing because, once sentence is imposed, a federal defendant may challenge the irrevocability of his plea in either his criminal appeal or his § 2255 *habeas corpus* petition, but not in a civil forfeiture proceeding like this action. Fed.R.Crim.P. 32(d). Finally, the timing of the government's notice, arguably occurring one hour after the Court accepted Bottom's plea, was not violative of his right to due process. *See United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850.00) in U.S. Currency*, 461 U.S. 555, 565–69, 103 S.Ct. 2005, 2012–14, 76 L.Ed.2d 143 (1983) (establishing a four-part delay test); compare *United States v. $75,900.00 in U.S. Currency*, Nos. 86–6063, 86–6064, 1987 WL 24747, at *2, 3, 1987 U.S.App. LEXIS 16281, at *5, 8 (6th Cir. Dec. 14, 1987) [835 F.2d 880 (table)] (per curiam) (twenty-nine month delay between seizure and initiation of forfeiture proceedings found constitutional where no prejudice to claimants is shown and criminal investigation is ongoing).

## B

■ Bottom's second contention—that the AUSA's initiation of forfeiture proceedings was retaliatory conduct—also lacks merit. Bottom has failed to supply the Court with any authority indicating that a prosecutor's malicious intent is either sufficient grounds, by itself, to void a forfeiture, or a factor to consider in determining whether to void a forfeiture. Nor has the

Court found such caselaw in its own research efforts.

The one case the Court has discovered which most closely parallels Bottom's argument is *United States v. Certain Real Property and Premises Known as 38 Whalers Cove Drive, Babylon, N.Y.*, 954 F.2d 29 (2d Cir.1992). The claimant to *38 Whalers Cove Drive* complained, as does Bottom, that the government's efforts to civilly forfeit his $145,000.00 condominium were punitive, since the 2.5 grams (or less) of cocaine he admittedly sold inside the condominium was worth just $250.00. Relying in part on *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), in which the Supreme Court analyzed whether a civil penalty constitutes punishment under the Double Jeopardy Clause, *id.* at 446–51, 109 S.Ct. at 1900–1903, the Second Circuit noted in *38 Whalers Cove Drive* that:

> Civil forfeitures do not retain their civil character if they are used in order to achieve deterrence or retribution.... *Halper* requires us to examine whether the forfeiture at hand is fully justified by the civil and remedial purposes it ostensibly serves, or whether it or a portion thereof can be explained only with reference to punitive goals.

954 F.2d at 36. While this language appears to track Bottom's argument, it is significant that the Second Circuit did not interpret *Halper* as requiring an analysis of the reasons why an apparently punitive civil forfeiture action was begun. Instead, the *38 Whalers Cove Drive* court used an economic analysis, and concluded that the punitive nature of a civil forfeiture turns on the value of the property seized in comparison to the value of the illegal drug transaction which forms the basis for the forfeiture. *See id.* ("[w]here the seized property is not itself an instrumentality of the crime ... and its total value is over-

---

law, but also because that law is criminal in nature. *See* 58 Ohio St.3d at 183, 569 N.E.2d at 921 (" ... the forfeiture of Casalicchio's automobile is an additional criminal penalty that the state

failed to seek prior to sentencing ...") (emphasis deleted). As explained, the government here seeks forfeiture of Bottom's home under 21 U.S.C. § 881, a civil remedy.

whelmingly disproportionate to the value of controlled substances involved in the statutory violation, there is a rebuttable presumption that the forfeiture is punitive in nature") (emphasis deleted); [4] *see also id.* at 37 ("[w]hile we are extremely sympathetic to the need to address our nation's serious narcotics problems, we do not believe that a disproportionately large forfeiture can be reasonably justified as a civil fine as opposed to punishment by placing full responsibility for the 'war on drugs' on the shoulders of every individual claimant") (quotation in original). The Court concluded, however, that the civil forfeiture of real property will not be presumed punitive "where the seized property has been used substantially to accomplish illegal purposes, so that the property itself can be said to be 'culpable' or an instrumentality of the crime." *Id.* at 36 (citing *Dobbins Distillery v. United States*, 96 U.S. 395, 401, 24 L.Ed. 637 (1878)).

Such is the case here. The 453 grams of cocaine, the possession of which Bottom plead guilty to, were found, as noted, in his house. App. at 15. That house, the defendant to this action, was thus an instrumentality of Bottom's drug crime. Therefore, even if the Court assumes, *arguendo*, that the AUSA did act punitively and, further, that the Court is bound by *38 Whalers Cove Drive*, Bottom has failed to sustain his burden of proof.

## IV.

In light of the above, the Court GRANTS the government's motion for summary judgment and decree of forfeiture (doc. 19), and TERMINATES this case upon the docket.

IT IS SO ORDERED.

---

**4.** That presumption may be overcome by the government, once it proves that its costs "of investigation and detection, as well as other costs and damages attributable to the criminal misconduct of the claimant" evidence an intent

APPENDIX

United States District Court

for the Southern District of Ohio

Western Division

United States,

Plaintiff,

vs.

Jeffrey W. Bottom,

Defendant.

CASE NO. CR–1–90–089–1

APPEARANCES

On behalf of Plaintiff:

Robert C. Brichler, ESQ.

Assistant U.S. Attorney

On behalf of Defendant:

Peter W. Swenty, ESQ.

800 American Building

30 East Central Parkway

Cincinnati, OH 45202

BE IT REMEMBERED that the above-entitled Change of Plea came on to be heard before the Honorable Herman J. Weber, on the 25th of October, 1990.

TRI–COUNTY COURT REPORTING AND VIDEOTAPE SERVICE

95 S. FOURTH STREET

BATAVIA, OH 45103

(513) 732–1477

(Thereupon, at 4:06 p.m., Court convened, to wit:)

THE COURT: Proceed.

THE CLERK: We have criminal case number CR–1–90–089–1, the United States of America versus Jeffrey W. Bottom. Present at counsel table for the plaintiff is Mr. Robert Brichler, Assistant U.S. attorney and Mr. Mike Fieler of the DEA. Present at counsel table for the defendant is Mr. Peter W. Swenty, attorney, and the defendant, Mr. Jeffrey Bottom.

to enforce a sanction that is "entirely assignable to civil purposes ... [not] designed to serve punitive purposes." *38 Whalers Cove Drive*, 954 F.2d at 37.

THE COURT: It's the understanding of the Court that this matter is before the Court at this time for a plea of guilty to the charge or some of the charges as a result of, I imagine, a plea agreement; is that correct, Mr. Brichler?

MR. BRICHLER: No, Your Honor. Mr. Bottom is charged in two counts in the indictment. There's no plea agreement and he desires to change his plea to guilty to those two counts with a notation, Your Honor, that the plea is conditional pursuant to, I believe it's Rule 11 or 12—

MR. SWENTY: 11.

MR. BRICHLER:—and reserving his right of appeal on a pre-trial motion.

THE COURT: Well, I have no objection to him reserving the right to appeal the decision of the Court on the motion to suppress. It would be the intent of the Court that the reservation and the right to appeal would be preserved to the defendant, although that will not effect the judgment of the Court or the sentence imposed in the matter. And I presume the appeal would be taken as an appeal of the conviction and of the sentence at the appropriate time.

MR. SWENTY: On behalf of the defendant, Your Honor, the appeal may not be made upon the sentence if the sentence is in accordance with what we feel the guidelines should be, it may be over the overruling of the motion to suppress.

THE COURT: But I expect the defendant would have the right to appeal both the sentence and the—

MR. SWENTY: Thank you. I understand. For the record, I think the Court has what is entitled a conditional plea reservation which I drafted trying to use the language of the rule as much as possible, and I assume that would be filed in the case.

THE COURT: I'll convey it to the clerk. Thank you. Do you desire me to proceed, Mr. Swenty, at this time?

MR. SWENTY: Yes, I do, Your Honor.

THE COURT: Mr. Bottom, are you able to hear me? Be seated. This is going to be a long session. Are you able to hear me all right? If, during the course of this proceeding, you have any questions or you desire to make any comments, please do not hesitate to do so, and if you're concerned and do not wish to ask a question of me directly, for example, please confer with Mr. Swenty and he'll ask it on your behalf or draw the problem to my attention.

THE DEFENDANT: Thank you.

THE COURT: Before I accept your plea of guilty, I must determine that it is made voluntarily with understanding of the nature of the charge and the consequences of the plea. By offering to plead guilty, you give up certain of your constitutional rights. There must be an intentional giving up of rights and privileges that you now have. Please understand that I need not accept your plea unless satisfied of your guilt and you thoroughly understand your rights.

In order to make this determination, I must ask you several questions. Before I do, however, it's necessary that you take an oath or obligation to tell the truth. Once having been sworn, your answers to my questions will be subject to the penalties of perjury of making a false statement or possibly contempt of court if you do not answer truthfully. Are you willing to assume the oath to tell the truth?

THE DEFENDANT: Yes, sir.

THE COURT: Would you swear the witness?

(Thereupon, the clerk swore the defendant.)

THE COURT: Mr. Bottom, how old are you, sir?

THE DEFENDANT: Pardon?

THE COURT: How old are you?

THE DEFENDANT: 43.

THE COURT: And how much education do you have?

THE DEFENDANT: Fourteen years.

THE COURT: Is it fair, then, for me to believe that you're able to read and write and communicate in the English language?

THE DEFENDANT: Yes, sir.

THE COURT: Have you taken any narcotics, drugs, medicine or pills or drunk any alcoholic beverage in the past twenty-four hours?

THE DEFENDANT: No, sir.

THE COURT: Mr. Swenty, do you have any doubt as to the defendant's competency to plead at this time?

MR. SWENTY: I do not, Your Honor.

THE COURT: Now, Mr. Bottom, in the indictment, you're charged with two counts, and I will read those counts to you, and please understand that if you enter your plea of guilty, you will admit to the truth of every word in those counts. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The truth. Every word. Count 1. On or about August 10, 1990, in the Southern District of Ohio, and the Southern District of Ohio includes Clermont County, for example, you, Jeffrey W. Bottom, did knowingly and intentionally and unlawfully use a communication facility, that is, a telephone, to facilitate the commission of a felony, that is, possession with intent to distribute cocaine, a Schedule II narcotic drug controlled substance and conspiracy to do the same in violation of 21 U.S. Code Section 841 and 846 in that you used the telephone to arrange for the sale of cocaine, in violation of Title 21 U.S. Code Section 843(B) and 18 United States Code Section 2.

Now, Count 2 reads that on or about August 11th, 1990, in the Southern District of Ohio, that you, along with Richard L. Kleins, did knowingly and intentionally unlawfully possess with intent to distribute a Schedule–II narcotic drug controlled substance, to wit, cocaine, in violation of 21 U.S. Code Section 841(a)1 and 1 U.S. Code

Section 2. The following is under the title forfeiture. The following property was stolen and was derived from the proceeds the defendants obtained directly or indirectly as a result of the above-described offense, a felony under subsection or subchapter 1 of chapter 13 United States Code Section 801, and is thus subject to forfeiture to the United States in accordance with 21 U.S. Code Section 853(a)(1). $9,400 in U.S. currency was taken from Jeffrey W. Bottom. The next item is $9,400 in United States currency taken from Richard M. Kleins.

Now, do you understand the nature and meaning of these charges and the forefiture?

THE DEFENDANT: Yes, sir.

THE COURT: Have you told your lawyer everything you know about this case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you believe your lawyer is fully informed about the facts and circumstances on which these charges are based?

THE DEFENDANT: Yes, sir.

THE COURT: And has your lawyer fully informed, counselled and advised you on the nature and meaning of these charges and the forfeiture?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand what the maximum possible penalty for this count or these counts are?

THE DEFENDANT: Yes, sir.

THE COURT: And what are they?

THE DEFENDANT: (No response.)

THE COURT: Well, it's—Let me go over them with you. In Count 1, the use of a communication facility, it's four years, a $250,000 fine, supervised release and a $50 assessment. Now, on Count 2, possession with intent to distribute cocaine, it's a maximum of twenty years, a million dollar fine, a $50 assessment, $9,520 forfeiture and up to three years on supervised release.

THE DEFENDANT: Yes, sir.

THE COURT: Now, the importance of this supervised release is that if you would

violate the conditions of your supervised release, that you could be sentenced to serve in the penitentiary the three years supervised release term, so it in addition to the twenty years, for example, or the four years that you would or could be required to serve under this term of the statute. It's an additional penalty under certain conditions, do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Now, do you understand that if I accept your plea of guilty, that I can impose this maximum penalty?

THE DEFENDANT: Yes, sir.

THE COURT: Which together would be twenty-four years and a million, $250,000 fine, $100 special assessment, three years supervised release and a forefiture of $9,520.

THE DEFENDANT: Yes, sir.

THE COURT: Do you owe any other court a sentence of any kind?

THE DEFENDANT: No, sir.

THE COURT: And the reason I bring that to your attention is because if you had, then whatever sentence this Judge may impose upon you would be in addition to or consecutive, as we say, with any sentence some other court may impose upon you. Are you aware that the sentence you'll receive in this case will be imposed pursuant to the Sentencing Reform Act and the sentencing guidelines?

THE DEFENDANT: Yes, sir.

THE COURT: Are you aware that there is no provision for parole in the Sentencing Reform Act?

THE DEFENDANT: Yes.

THE COURT: Do you understand that despite the sentencing guidelines, the Judge may impose a sentence that is more severe or less severe than such guidelines?

THE DEFENDANT: Yes.

THE COURT: And do you understand that under certain circumstances, either you or the United States may appeal the sentence imposed?

THE DEFENDANT: Yes, sir.

THE COURT: And we've discussed the portion of supervised release in this regard. Now, since you know the maximum penalty the Judge can impose, do you still wish to plead guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if the Judge accepts your plea of guilty, he may or may not place you on probation?

THE DEFENDANT: Yes, sir.

THE COURT: I advise you that under the constitution and laws of the United States, you have the right to persist in your plea of not guilty. You have the right to be tried by a jury and at such a speedy and public trial, you would have the right to the assistance of a lawyer, the right to confront and cross-examine witnesses against you and the right not to be compelled to incriminate yourself. At such trial, you would be presumed innocent until such time as the government establishes your guilt by competent evidence beyond a reasonable doubt. At such trial, you'd be entitled to compulsory process to call witnesses on your behalf. Do you understand that if you plead guilty, you give up all these rights which I have mentioned?

THE DEFENDANT: Yes, sir.

THE COURT: And do you understand that if you plead guilty, there will not be a further trial of any kind in your case, so that by pleading guilty, you are giving up the right to a trial?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if your plea of guilty is accepted, the Judge can impose the same penalty as though you pled not guilty, stood trial and had been convicted by a jury?

THE DEFENDANT: Yes, sir.

THE COURT: If you plead guilty, do you understand that you will also have to give up your right not to incriminate yourself since I will have to ask you questions about what you did in order to satisfy myself that you are guilty as charged and you will have to acknowledge your guilt?

THE DEFENDANT: Yes, sir.

THE COURT: Are you willing to give up your right to a trial and the other rights I've just discussed?

THE DEFENDANT: Yes, sir.

THE COURT: Proper plea agreements are permitable, however, you and all the lawyers must disclose and you have the duty to disclose the existence and terms of any such agreement. Have you entered into any plea agreement between you and the government in this case?

THE DEFENDANT: No, sir.

THE COURT: It's my understanding that the only thing that has been agreed to, or at least indicated to by the government and you, is the fact that there is a conditional plea reserving your right to appeal the decision of this Court on the motion to suppress; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Is there any other agreement of any kind, Mr. Swenty?

MR. SWENTY: There is not, Your Honor.

THE COURT: Mr. Brichler?

MR. BRICHLER: That's correct, Your Honor, no other agreements.

THE COURT: Now, other than what we have just discussed, are there any other agreements or any other promises that have induced you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Other than what we have just discussed, has any person, including an officer or agent of the government, promised or even suggested that you'll receive a lighter sentence or any other form of liency if you plead guilty other than that provided in the sentencing guidelines?

THE DEFENDANT: No, sir.

THE COURT: Have any threats been made which induced you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Is it fair, then, to believe that this decision of yours to enter this conditional plea of guilty is your voluntary act and deed?

THE DEFENDANT: Yes, sir.

THE COURT: And is it fair for me to believe that you're entering this plea of guilty with the full understanding of the nature of the charge against you and the consequences of your plea?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Brichler, is there anything further I should inform the defendant of or discuss with him before we determine the fact basis?

MR. BRICHLER: I don't think so, Your Honor.

THE COURT: Mr. Swenty, anything you wish me to discuss with the defendant or add to the record before we determine the factual basis?

MR. SWENTY: No, sir.

THE COURT: Mr. Bottom, I'm going to ask the government through an agent to tell the Court what occurred in this matter. Please listen carefully because I'm going to ask you to confirm what he said, and I'm going to ask you to make any additions or corrections to what he said and point out any mistakes of what he said, so it's most important. And then once we decide on what did happen, then I'm going to ask you to confirm that as the truth. Proceed, Mr. Brichler.

MR. BRICHLER: Yes, Your Honor. Agent Mike Fieler with DEA.

MR. FIELER: On Count 1, on August 10th, 1990, Jeffrey W. Bottom knowingly used a communication facility, telephone, to discuss the future sale of four ounces of cocaine to an informant. At approximately 9:15 p.m., in Clermont County, Ohio, the defendant told the informant that the cocaine would be available later that night or the next morning. The telephone call was recorded by the DEA with the consent of the informant.

Count 2, based upon information taken and investigation conducted by law enforcement officers, a state search warrant as to Jeffrey Bottom's residence in Clermont County, Ohio was obtained the early morning hours of August 11, 1990. During the execution of the search warrant, offi-

cers found approximately 16 ounces of co-caine and a triple-beam scale. One of the bags containing cocaine and $9,520 of U.S. currency was received and the currency and the proceeds of the cocaine sales were forfeitable to us.

THE COURT: Are there any additions or corrections that you wish to make in that statement, Mr. Bottom?

MR. SWENTY: No, sir.

THE DEFENDANT: No, sir.

THE COURT: Is that statement the truth?

THE DEFENDANT: Yes.

THE COURT: Is it fair, then, for me to believe that you are pleading guilty here today because you are, in fact, guilty of Count 1, use of a communication facility to facilitate a felony, and Count 2, possession with intent to distribute cocaine?

THE DEFENDANT: Yes.

THE COURT: Is there anything further I should do before I proceed to make my findings in the matter?

MR. BRICHLER: No, Your Honor.

MR. SWENTY: No, sir.

THE COURT: Mr. Bottom, is this how you wish to proceed in the matter?

THE DEFENDANT: Yes, sir.

THE COURT: Let the record show the trial Judge has observed the appearance and responses of the defendant as he has given his answers to the questions asked. Based upon such observation and the answers given, the Judge is satisfied that the defendant is in full possession of his faculties. He is not suffering from any apparent physical or mental illness, he is not under the influence of narcotics or alcohol, he understands that the Sentencing Reform Act and the sentencing guidelines apply to his case. He understands the proceeding in which he is engaged, and he understands the nature and meaning of the charges and the consequences of his plea of guilty, he is aware of all plea negotiations undertaken on his behalf.

And Mr. Bottom, just so that I'm sure you are aware that under the Sentencing Reform Act, there is no parole.

THE DEFENDANT: Yes, sir.

THE COURT: Therefore, the Court finds that the plea has been made voluntarily with an understanding of the nature of the charges and the consequences of such plea, including the forfeiture, and I will accept your plea of guilty and enter a judgment of guilty to a violation of Title 21 U.S. Code Section 843(b), use of a communication facility to facilitate a felony, and Count 2, possession with intent to distribute cocaine, 21 U.S. Code Section 841(a)1. Are there any other—there is a matter pending, a request for travel out of state, Mr. Swenty, and the matter of bond. Now, does the government have any position on the matter of bond?

MR. BRICHLER: We would recommend the same bond be placed in effect, Your Honor. As far as the travel is concerned, whatever is fine with the probation department is fine with us.

THE COURT: Well, it's been reported to the Court that the pre-trial service office has no objection to the travel.

MR. BRICHLER: That would be fine with us then.

THE COURT: All right. Based upon the recommendation or the information from the pre-trial service office and the affidavit of Mr. Bottom, and Mr. Bottom, please understand that you're still under the penalties of this bond.

THE DEFENDANT: Yes, sir.

THE COURT: And that if you should violate the conditions of the bond, you have committed an offense against the United States that would result in a penalty that would be in addition to any penalty, and it probably would be more severe than the penalty imposed under the count to which you have just pled to. The responsibility that you have under the bond—and you will pay the price if you violate the condition. And it's my understanding that from your affidavit and from your past appearances in court, that you will present your-

self to the court and agree with the Court to return when requested to do so.

THE DEFENDANT: Yes, sir.

THE COURT: All right. The bond, therefore, will be continued and permission is granted for the defendant to travel to the State of Florida from November 4, 1990 through November 12, 1990 for the purposes of conducting business at 1700 Stester Boulevard, 806 Ft. Myers Beach, Florida, 33931. Is there anything that the Court should do at this time other than refer it to the probation department for pre-sentence?

MR. BRICHLER: Not from the government, Your Honor.

THE COURT: Mr. Swenty?

MR. SWENTY: No, sir.

THE COURT: The matter then will be referred to the United States Department of Probation for pre-sentence investigation and report. And the conditional plea of guilty is entered in the record. Thank you.

(Thereupon, Court adjourned at 4:30 p.m.)