UNITED STATES of America, Appellee,

v.

Walter F. CONNOLLY, a/k/a "Snake",
Defendant, Appellant.

No. 94–2083.

United States Court of Appeals,
First Circuit.

Heard March 2, 1995.

Decided April 4, 1995.

**2**

Jean–Claude Sakellarios with whom David I. Bailinson and Sakellarios & Associates, were on brief, for appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Jay P. McCloskey, U.S. Atty., and Jonathan R. Chapman, Asst. U.S. Atty., were on brief, for the U.S.

Before BOUDIN, Circuit Judge, CAMPBELL, Senior Circuit Judge, and STAHL, Circuit Judge.

BOUDIN, Circuit Judge.

On December 21, 1993, Walter F. Connolly pleaded guilty to two counts of a four-count indictment. The indictment related to the 1992 entry by Connolly and others into a home in Cornish, Maine, where Connolly and his confederates believed they would find a cache of marijuana to steal. Based on a plea agreement, Connolly pled guilty to one count of conspiring to possess marijuana with intent to distribute, 21 U.S.C. §§ 841, 846, and one count of carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c).

The presentence report dated February 22, 1994, proposed that the amount of drugs attributed to the conspiracy be set at 145.1 kilograms (just under 320 pounds); the base offense level is 26 for 100 to 400 kilograms of marijuana. U.S.S.G. § 2D1.1(c)(7). The report recommended a four-level enhancement because Connolly was a leader or organizer, U.S.S.G. § 3B1.1(a), and a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1. Connolly had only one criminal history point, based on a Florida assault conviction, but also 19 other charges or convictions not counted because of age or other circumstances.

The government moved for an upward departure for uncounted criminal history. U.S.S.G. § 4A1.2. Connolly's counsel countered the government's motion by saying that the earlier prosecutor who negotiated the plea had promised not to move for an upward departure. Connolly filed various objections to the presentence report, moved for a downward departure based on diminished capacity, and sought as a witness the homeowner whose house had been invaded. The district court found that the homeowner's testimony was irrelevant because no marijuana had been found and the issue was what Connolly had believed would be found.

After a delay to determine what the earlier prosecutor had said, the district court sentenced Connolly on October 3, 1994. On the issue of drug quantity, the government presented testimony from an investigator who had interviewed other cooperating defendants; according to the investigator's reports of his interviews, the defendants had expected to find at least eight 40–pound bags of marijuana, although higher figures were also reported. Connolly testified and denied expecting that any marijuana would be found; he said that he had expected the drugs to be gone and that he had participated only in the hope of finding money.

The government continued to press for an upward departure based on uncounted criminal history, arguing that no promise had been made by the earlier prosecutor not to move for an upward departure. Defense counsel who had been involved in the plea negotiations reported that the earlier prosecutor had said, "you're lucky we're not asking for an upward departure," and then repeated, when a protest was made, "we're not going to do that." Counsel also reported that the earlier prosecutor had also made guideline computations that showed no such departure.

The district court then found that the relevant quantity of marijuana was 145.1 kilograms, reflecting the amount that the conspirators had expected to steal; that the upward adjustment of four levels for leadership, and a downward one of three levels for acceptance of responsibility, were both proper; and that a downward departure sought by Connolly for substance abuse was not warranted. This resulted in an adjusted offense level of 27 for count I.

As to criminal history, the court found that the government had not promised to refrain from seeking an upward departure. The court also said that it "would in any event have contemplated departing upward ... if the government had not so requested." The court found that Connolly had an extensive criminal history reflecting "a lifelong pattern of criminality." The court also found that a 17–year–old burglary conviction, although remote in time, should be counted under U.S.S.G. § 4A1.2 because it was similar in nature to the crime of conviction. This added three points to Connolly's criminal history, placing him in category III.

The resulting guideline range for count I was 87 to 108 months. The court imposed a sentence of 100 months, deducting time already spent in pretrial custody. The statutory minimum sentence of 60 months, to be served consecutively to the count I sentence, was imposed on count II. 18 U.S.C. § 924(c). Connolly has now appealed to this court.

Connolly's first challenge is to the district court's upward departure based on criminal history. The first of two separate arguments is that the government's motion for an upward departure was a breach of the plea agreement or at least the earlier prosecutor's promise that no such departure would be sought. We assume *arguendo* the accuracy of the defense's description of what the prosecutor said; two lawyers so testified and the government did not squarely deny it. Still, it is difficult to regard that statement as a part of the plea bargain because of the language of the plea agreement itself.

The agreement explicitly sets forth the various obligations of the parties, specifies that the government's commitment is to drop two other counts, and says that "Defendant understands that there are no further or other promises or agreements, either express or implied, other than those contained in this Agreement and that none will be made except in writing and signed by all parties." Further, neither Connolly nor his counsel referred to an oral promise by the government not to move to depart when, at the Rule 11 hearing, the district court inquired whether any other promises had been made.

What we have, therefore, is a prosecutor's oral comment that might or might not be taken as a promise. But, if taken as a promise, it was not included in a later filed agreement that purported to be a complete integration of all promises made by the government. Reading the document in full, it is hard to know what more a prosecutor could do to write an agreement that negated promises other than those set forth in the document. Further, the defense thereafter confirmed in open court that no unwritten promises were part of the plea bargain.

■ Absent special circumstances, a defendant—quite as much as the government— is bound by a plea agreement that recites that it is a complete statement of the parties' commitments. We have said that there may be exceptions to this general rule in unusual cases, *Bemis v. United States,* 30 F.3d 220, 222 (1st Cir.1994), but Connolly has pointed to nothing unusual in this case. The earlier oral representation is not offered to explain but rather to contradict the later writing. Nor is there any basis here for charging the government with deliberate misconduct.

■ In some cases, earlier oral discussions with the prosecutor may be perfectly legitimate evidence to interpret or clarify later written statements. This appears to have been the case in *In re Arnett,* 804 F.2d 1200 (11th Cir.1986), cited to us by Connolly. In *Arnett,* the prosecutor told the defendant orally that the government had no interest in forfeiting his farm. The resulting plea agreement provided for the defendant to forfeit $3,000 found on him at the time of his arrest. The Eleventh Circuit held that a later effort by the government to forfeit the farm was a breach of the bargain.

The court in *Arnett* reasoned that the specific $3,000 forfeiture provision in the agreement gave the defendant some basis in the document for thinking that this was the only forfeiture to be sought, at least when the document was taken in the context of the earlier discussion. If the plea agreement were read as the defendant claimed to read it—to mean that forfeiture was *limited* to $3,000—then defense counsel arguably had reason to think that no separate reference to the farm was required in the document or in the Rule 11 colloquy.

█ In this case, we do not see how any language in the written agreement can be construed, or even reasonably misconstrued, as a promise by the government not to move for a departure. The agreement did not commit anyone as to sentencing recommendations; indeed, it specifically provided that each side was free to petition for an "appropriate" sentence. The prosecutor's sample guideline calculation was not a part of the agreement, and such illustrative calculations appear to be commonplace. In sum, it would not be reasonable to read the agreement to establish, or the Rule 11 colloquy to preserve, a promise by the government not to move for a departure.

It is worth adding that in this case, unlike *Arnett*, we do not have an apparent threat of unfairness. While the forfeiture in *Arnett* was ultimately in the control of the prosecutor, the departure decision in this case lay with the district court. The district judge said that he would have considered an upward departure based on criminal history even if the government had never raised the subject. The nature of Connolly's record, yet to be recounted, amply explains this sentiment. Further, the presentence report proposed that the district court consider such a departure.

Under ordinary rules these facts might also suggest that if the government did make and break an explicit promise, that breach could still be deemed harmless. The government urges this as an alternative ground for affirmance, but does not try to square its position with *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), which appears to remain the law. *See Unit-*

*ed States v. Canada,* 960 F.2d 263, 271 (1st Cir.1992). *Compare Kingsley v. United States,* 968 F.2d 109, 115 (1st Cir.1992). We leave this issue for another day and decide this case on the ground that the government did not break any promise to which it was committed by the final agreement.

█ In a related argument Connolly says that the district court erred on the merits in departing based on criminal history. Connolly's record of criminal conduct, convictions and pending charges was lengthy. Apart from the Florida assault conviction that represented his first criminal history point, Connolly had been convicted for car theft, malicious damage, larceny, multiple assaults, weapons offenses and various drug offenses, in addition to other less serious charges. For various reasons—such as age—these convictions did not automatically translate into criminal history points.

The guidelines provide that the district court may depart upward wherever reliable information indicates that "the criminal history category [in which the defendant is initially placed] does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood" of future crime. U.S.S.G. § 4A1.3. Here, the district court followed the guidelines' methodology for departures by making an adjustment in the defendant's criminal history category and then applying the guideline range that corresponded to the new category. *Id.* The court determined the new criminal history category by awarding points for a prior armed burglary conviction that fell about two years beyond the 15–year cut-off period. *Id.* § 4A1.2(e)(1).

In this court, Connolly objects to the departure on the ground that the prior conviction was a single incident, long in the past, that did not closely resemble the present crime. But the district court did not make the adjustment solely on account of the single prior conviction but because of a substantial criminal career which, after a period of reasonably good behavior, Connolly gave evidence of resuming. The 17–year–old conviction, bearing some general resemblance in

type to the current offense, was used simply as a benchmark to measure the departure.

The district court's judgment as to the need for, and degree of, departure based on uncounted criminal history is subject to substantial deference on judicial review. *United States v. Mottram*, 34 F.3d 1065, 1994 WL 456340 (1st Cir.1994). We have already noted the defendant's record and the defendant's two recent crimes—the recent Florida assault and the armed drug offense in this case. It is unnecessary to embellish matters by describing in more detail the very dangerous home invasion in this case, which nearly resulted in several deaths, or Connolly's prior motorcycle-gang affiliations and their role in this case.

Connolly's remaining arguments relate to the district court's findings as to the quantity of drugs and Connolly's leadership role. Connolly says that these findings rested on unreliable hearsay, thus violating both the guidelines and the Sixth Amendment. He also says that the evidence does not justify the findings. *Reliable* hearsay can be used at sentencing, *United States v. Zuleta-Alvarez*, 922 F.2d 33, 36 (1990), *cert. denied*, 500 U.S. 927, 111 S.Ct. 2039, 114 L.Ed.2d 123 (1991), and whether reliable evidence supported the findings here is tested on appeal under the "clear error" standard. *Id.* at 36–37.

Since no drugs were present in the house, the quantity attributable to Connolly depended on what he and his confederates expected to find. *United States v. Piper*, 35 F.3d 611, 615 (1st Cir.1994). The views of Connolly's co-defendants were assuredly hearsay, being reported in the presentence report and by an investigating officer who testified. But the co-defendants were generally consistent in fixing 320 pounds as about the least that Connolly and the others expected to find. The district court was not obliged to credit Connolly's own statement that he did not expect to find any drugs at all. *United States v. Brewster*, 1 F.3d 51 (1st Cir.1993).

As for "leadership," Connolly did not concoct the offense but, at the behest of the original plotters, he recruited four other men into the venture, claimed a large share of the expected profits, and negotiated terms with the original plotters. Other co-defendants pointed to Connolly as giving orders to others in the actual planning and execution of the plan. Connolly could permissibly be found to be a leader or organizer, U.S.S.G. § 3B1.1(a). Again, the district court was not required to accept Connolly's denials or those of a close friend, who gave rather insubstantial testimony.

*Affirmed.*