62 F.3d 1411
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Stephen D. CARDELLI, Defendant, Appellant.
 No. 94-2109.
 United States Court of Appeals,
First Circuit.
 July 27, 1995.
 
 Robert M. Napolitano on brief for appellant.
 Jay P. McCloskey, United States Attorney, Jonathan R. Chapman, Assistant United States Attorney, and F. Mark Terison, Assistant United States Attorney, on brief for appellee.
 D.Me.
 AFFIRMED.
 Before CYR, BOUDIN and LYNCH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Stephen Cardelli appeals the sentence imposed upon his convictions for federal tax evasion and conspiring to possess with intent to distribute more than five kilograms of cocaine. We affirm.
 
 I.
 
 2
 In September 1992, a six-count indictment charged Cardelli with two drug offenses and four counts of tax-evasion. Cardelli subsequently entered into a plea agreement under which he agreed to plead guilty to counts one and six of the indictment. These respectively charged him with conspiring to possess with intent to distribute cocaine in violation of 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(A), and evasion of federal income taxes in violation of 26 U.S.C. Sec. 7201.[1] Cardelli entered his guilty plea on April 7, 1993. His sentencing hearing was held on September 26, 1994.
 
 
 3
 At the sentencing hearing, Cardelli contested the drug quantity used to calculate his sentence under the United States Sentencing Guidelines (Nov. 1993). While Cardelli could not recall the precise amount of cocaine that he sold, he estimated it to be an amount below 15 kilograms.[2] The government then called DEA Agent John Bryfonski, the case agent on the investigation that led to Cardelli's indictment. Consistent with the information in the presentence report (PSR), Bryfonski testified that between May, 1988 and May or June, 1989, Cardelli and four others participated in a cocaine distribution ring that operated in the Portland, Lewiston, and Auburn areas of Maine.[3] Agent Bryfonski testified that Dan and Randy Hicks and Pizzi each provided consistent information to the government concerning the birth and subsequent operation of the conspiracy. Thus, sometime in May, 1988, the five conspirators met at Giobbi's restaurant in Portland and agreed that Cardelli would supply cocaine to Dan and Randy Hicks who, in turn, would distribute it to Pizzi for retail sales.
 
 
 4
 Dan Hicks estimated that Cardelli supplied him with approximately 25-30 kilograms of cocaine during the course of the conspiracy. Randy Hicks, who often transported the cocaine from Portland to Lewiston/Auburn, estimated that a total of 20- 25 kilograms was involved. Pizzi indicated that he received approximately 35-40 kilograms during the course of the conspiracy.[4] Bryfonski also testified that Cardelli himself had indicated during his debriefing sessions with government agents that he had sold more than 15 kilograms.
 
 
 5
 Cardelli did not testify at his sentencing hearing. He presented no evidence to controvert agent Bryfonski's testimony. Defense counsel stated that he would like an opportunity to cross-examine the coconspirators, implying that their statements, particularly that of Dan Hicks, were unreliable because the coconspirators had all been given reduced sentences in return for implicating Cardelli.[5] Relying on agent Bryfonski's testimony and the information in the PSR, the district judge found that Cardelli was responsible for at least 15 kilograms of cocaine and that his corresponding base offense level was 34.[6] While the court acknowledged that agent Bryfonski's description of the conconspirators' drug quantity estimates was hearsay, the court found that this evidence was reliable because all three coconspirators had indicated that at least 15 kilograms had been distributed during the course of the conspiracy.[7]
 
 
 6
 Thus, starting with a base offense level of 34, the court added 2 points based on Cardelli's leadership role in the conspiracy and deducted 3 points based on his acceptance of responsibility to arrive at a total offense level of 33. Applying criminal history category II, the court determined that Cardelli's guideline sentencing range was 151-188 months. The court then allowed the government's motion for a downward departure based on Cardelli's substantial cooperation (see U.S.S.G. Sec. 5K1.1) and accepted the government's sentencing recommendation. The court sentenced Cardelli to 108 months' imprisonment and 5 years of supervised release on the conspiracy count and to a concurrent 60 months' imprisonment and 3 years of supervised release on the tax evasion charge. Cardelli appeals this sentence.
 
 II.
 
 7
 Cardelli maintains that the district court made a serious mistake by basing its drug quantity finding on the hearsay statements of his coconspirators as described in agent Bryfonski's testimony. Cardelli implies that these descriptions are nothing more than "drug filtered memories" that are all the more unreliable because they were not tested by cross-examination. Cardelli contends that the district court committed clear error by crediting this hearsay evidence without requiring the coconspirators to testify in court.
 
 
 8
 We review the district court's findings on drug quantity only for clear error. See, e.g., United States v. Whiting, 28 F.3d 1296, 1304 (1st Cir.), cert. denied, 115 S. Ct. 328 (1994); United States v. Zuleta-Alvarez, 922 F.2d 33, 36-7 (1st Cir.1990), cert. denied, 500 U.S. 927 (1991). We find no error here. It is well established that, "[r]eliable hearsay can be used at sentencing." United States v. Connolly, 51 F.3d 1, 5 (1st Cir.1995)(holding that codefendants' drug quantity estimates reported in PSR and investigating officer's testimony were reliable hearsay where estimates were "generally consistent"). Here, as in Connolly, the three coconspirators consistently attributed more than 15 kilograms of cocaine to Cardelli. This consistency was sufficient corroboration that the coconspirators' estimates were reliable enough to support the court's conservative finding that Cardelli was responsible for at least 15 kilograms. But for his own unsworn statements, Cardelli presented no evidence to the contrary. The district court was not required to credit Cardelli's contrary estimate, see Connolly, id., particularly where Cardelli presented no evidence and conceded that he did not recall the precise amount that he had sold.
 
 
 9
 We also do not find any error in the district court's acceptance of the drug quantity estimates reported by agent Bryfonski absent direct testimony from Cardelli's coconspirators. Although the PSR clearly indicated that these witnesses had knowledge of the amounts involved, defense counsel did not ask for cross-examination until the day of Cardelli's sentencing hearing. This was far too late. See United States v. Zuleta-Alvarez, 922 F.2d at 36 (holding district court did not err in denying request for cross- examination made at sentencing hearing). We have reviewed the record thoroughly and are satisfied that the district court's quantity determination is supported by a preponderance of the evidence. See United States v. Morillo, 8 F.3d at 871. Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 The government agreed to dismiss the remaining counts of the indictment. Cardelli also agreed to cooperate with the government's investigative efforts
 
 
 [2]
 The Drug Quantity Table of the Guidelines, Sec. 2D1.1(c), assigned a base offense level of 34 to offenses involving at least 15 but less than 50 kilograms of cocaine
 
 
 [3]
 The other individuals involved in the conspiracy were Jonathan Singer, who supplied the cocaine to Cardelli, Dan and Randy Hicks, a father and son team who obtained cocaine from Cardelli, and Christopher Pizzi, who obtained cocaine from the Hickses and distributed it to retail customers in the Lewiston/Auburn area. Although Singer was never charged, Dan and Randy Hicks and Christopher Pizzi pled guilty to drug offenses arising from their conspiracy with Cardelli
 
 
 [4]
 When asked how Pizzi knew that all of this cocaine came from Cardelli, Bryfonski related that Pizzi was occasionally present in Cardelli's business office when distribution matters were discussed
 
 
 [5]
 We note, however, that defense counsel neither subpoenaed these witnesses, nor requested a continuance so that he might secure their presence. Yet it was apparent from the PSR that substantially more than 15 kilograms had been attributed to Cardelli
 
 
 [6]
 The PSR attributed a total of 29.4 kilograms to Cardelli. That figure was based on evidence that Cardelli had distributed a total of 27 kilograms to Dan Hicks for Christopher Pizzi and evidence that Cardelli also had provided an additional 2000 grams to one Phillip DiStefano for distribution to Dan Hicks. The PSR also indicated that Cardelli provided an additional 396.9 grams to another individual (Phillip Gullifer). Absent evidence to the contrary,"[f]acts contained in a presentence report ordinarily are considered reliable evidence for sentencing purposes." United States v. Morillo, 8 F.3d 864, 872 (1st Cir.1993)
 
 
 [7]
 The court specifically noted that it did not need to find the precise number of kilograms that Cardelli had sold since the court's finding triggered the base offense level for crimes involving 15 to 50 kilograms. See n. 2, supra