**UNITED STATES of America, Plaintiff–Appellee,**

v.

**REAL PROPERTY KNOWN AND NUMBERED AS RURAL ROUTE 1, BOX 137–B, CUTLER, OHIO, Defendant,**

**John Melvin Mayle, Claimant–Appellant.**

**No. 93–3167.**

United States Court of Appeals, Sixth Circuit.

Argued April 28, 1994.

Decided May 24, 1994.

After reviewing each of Mayle's assignments of error, we find that the district court did commit reversible error in determining the government had established probable cause without giving Mayle an opportunity to rebut the government's proof. Therefore, we reverse and remand.

Kathleen M. Brinkman, Office of U.S. Atty., Cincinnati, OH (argued), Kevin R. Conners, Office of U.S. Atty., Columbus, OH (briefed), for U.S.

Max Kravitz, Columbus, OH (argued and briefed), for John Melvin Mayle.

Before: GUY and NELSON, Circuit Judges; and QUIST, District Judge.*

PER CURIAM.

Claimant, John Mayle, appeals the judgment of the district court directing the forfeiture, pursuant to 21 U.S.C. § 881(a)(7), of certain real property used to facilitate the manufacture and distribution of controlled substances. On appeal, Mayle raises six arguments: (1) the district court erred in refusing to grant his pretrial motion to dismiss, or, in the alternative, to stay in light of the pending criminal proceedings against him; (2) the district court erred in instructing the jury that it could draw an adverse inference from his assertion of his Fifth Amendment right against self-incrimination; (3) the district court erred in denying him an opportunity to challenge the government's showing of probable cause; (4) the jury was erroneously told that the government had carried its initial burden of establishing probable cause; (5) the district court erred in consolidating the voir dire of this case with that of another, but related, case; and (6) the district court erred in admitting certain evidence pertaining to Mayle's knowledge of illegal activities that occurred at the defendant property in the related case.

## I.

In early 1988, the Washington County, Ohio, Sheriff's Department; the Parkersburg, West Virginia, Narcotics Task Force; and the Charleston, West Virginia, resident office of the DEA received information that a large drug ring was being operated by the Mayle family in Washington County, Ohio. Information from a number of sources indicated that the Mayles were using various sites in Washington County for the purpose of drying marijuana plants that had been either grown in Washington County or brought in from other counties. Further investigation revealed that the Mayle family was also involved in dealings with stolen property in the Southern Ohio area. Based on this information, the officers sought and obtained from the Washington County Court of Common Pleas a warrant to search property titled in the name of John Melvin Mayle, located at Rural Route 1, Box 137–B, in Cutler, Ohio.

On May 3, 1991, the Washington County Sheriff's Office executed the search warrant. In addition to finding articles of stolen property, the officers discovered marijuana and two sets of scales, including a triple beam balance scale located in the ceiling of Mayle's residence. In the basement, officers found a stack of five gallon buckets, fluorescent lights, a heater, a power converter, grow lights, an exhaust fan, reflective foil, plant food, light fixtures, power transformers, and numerous buckets and small pots.[1]

On July 8, 1991, the government filed a complaint with the district court seeking forfeiture of the Box 137–B property pursuant

---

* Honorable Gordon J. Quist, United States District Court for the Western District of Michigan, sitting by designation.

1. Also on May 3, 1991, officers executed a search warrant at a residence known as Rural Route 1, Box 198, Cutler, Ohio, where they found John Mayle. A discussion of the search and seizure that occurred at this location is addressed in *United States v. Real Property Known And Numbered as Rural Route 1, Box 198*, No. 93–3168, 1994 WL 198185 (6th Cir. May 19, 1994) (per curiam).

to 21 U.S.C. § 881(a)(7) on the grounds that the property had been used or was intended for use to facilitate violations of the Country's drug laws. Accompanying the complaint was a verification of complaint and affidavit of probable cause sworn to by Basil W. Santos, a special agent for the Drug Enforcement Administration.

On July 16, 1991, in an *ex parte* proceeding, Magistrate Judge Mark R. Abel found that the government had established probable cause to believe Mayle's property was subject to forfeiture. A warrant of arrest *in rem* was issued, authorizing the seizure of the property. The United States Marshal seized the property on July 31, 1991, and served all interested parties with notice of the action.

On August 9, 1991, Mayle filed a claim for the property, and, on August 29, he filed an answer to the government's complaint in which he raised a number of affirmative defenses. All but one of these defenses, a claim of innocent ownership, were dismissed prior to trial. The court also, as will be discussed later, rejected Mayle's pretrial motions.

The trial began on September 22, 1992, and upon its completion the case was submitted to the jury with instructions to answer three interrogatories. With respect to the first interrogatory, the jury found that Mayle had proven he was not involved in illegal activities at the defendant property, but by its answers to the second and third interrogatories the jury found that Mayle did have knowledge of the illegal activities and consented to them. The court then entered a judgment forfeiting the defendant property.

## II.

First, we will address Mayle's contention that the district court committed reversible error by preventing him from challenging the government's showing of probable cause. In reviewing the merits of this claim, we begin with a general discussion of forfeiture law.

■ Title 21 U.S.C. § 881(a)(7) authorizes the forfeiture of real property "which is used, or intended to be used, in any manner

or part, to commit, or to facilitate the commission of, a violation of [federal narcotics laws] punishable by more than one year's imprisonment[.]" To satisfy § 881, "the government 'must establish probable cause to believe that a substantial connection exists between the property to be forfeited and the illegal exchange of a controlled substance.' " *United States v. $67,220.00 in U.S. Currency,* 957 F.2d 280, 283 (6th Cir.1992) (quoting *United States v. 526 Liscum Drive,* 866 F.2d 213, 216 (6th Cir.1989)). Probable cause means a reasonable ground for belief of guilt "supported by less than *prima facie* proof but more than mere suspicion." *526 Liscum Drive,* 866 F.2d at 216 (citations omitted). In order to determine whether probable cause exists, the court "must examine the entire record, including evidence developed after the seizure[.]" *$67,220.00 in U.S. Currency,* 957 F.2d at 284. The responsibility for determining whether the government has met its burden of proving probable cause rests with the court. 19 U.S.C. § 1615.

■ Once probable cause is shown, the burden of proof shifts to the claimant to show by a preponderance of the evidence that the property is not subject to forfeiture. *United States v. $22,287.00, U.S. Currency,* 709 F.2d 442, 446 (6th Cir.1983). The claimant is entitled to an opportunity to refute the government's showing of probable cause. The claimant may attack the government's proofs as to probable cause at trial or by pretrial motion. *See, e.g., United States v. $53,082.00 in U.S. Currency,* 985 F.2d 245 (6th Cir.1993) (affirming the district court's grant of summary judgment in favor of the claimants because the government could not establish probable cause); *$67,220.00 in U.S. Currency,* 957 F.2d at 287 (reversing the district court's grant of summary judgment in favor of the claimants after finding the government had carried its initial burden of establishing probable cause); *United States v. 105,800 Shares of Common Stock,* 830 F.Supp. 1101, 1133 n. 49 (N.D.Ill.1993) ("At trial, [the claimant] may be able to refute the govern-

ment's showing of probable cause."). Occasionally, a court will hold a separate adversarial hearing in order to determine whether probable cause exists. *See, e.g., United States v. $83,320 in U.S. Currency,* 682 F.2d 573 (6th Cir.1982) (affirming a finding of probable cause based on evidence produced at a hearing held by the district court in which the claimant had the opportunity to cross-examine the government's witnesses and present his own witnesses). While these cases may differ procedurally, each of them demonstrates that claimants must be afforded an opportunity to rebut the government's showing of probable cause.

■ Here, a disagreement between Mayle and the government concerning probable cause appears as early as in the court's final pretrial order dated July 17, 1992. That order states:

It is the United States opinion that the uncontroverted facts are set forth in the Verification of Complaint and Affidavit of Probable Cause attached to the United States Complaint. The record in this case indicates that on July 16, 1991, this Court found probable cause to believe that the defendant property is subject to forfeiture under 21 U.S.C. § 881. It is the Claimant's opinion that these facts have to be proved at trial.

The dispute over probable cause was later settled in the district court's order of September 21, 1992. Mayle previously had filed a motion to exclude hearsay evidence from trial, or, in the alternative, to bifurcate the forfeiture trial. He conceded that certain hearsay was admissible for the court's probable cause determination, but argued that it would be inadmissible at the trial before the jury. The court's order states:

The Court finds the motion to be MOOT. On July 16, 1991, this Court found that probable cause exists to believe that the defendant property is subject to forfeiture under 21 U.S.C. § 881. Accordingly, the only issue for trial is the defense issue.

Mayle contends that this order, and the manner in which the district court addressed the probable cause issue in general, constitutes reversible error. We agree.[2]

By stating that Mayle's motion was moot, the district court indicated that it had already found that the government had established probable cause. The court refers to the magistrate judge's order of July 16, 1991, which directed the United States Marshal's Office to arrest the defendant property, as the point in which "this court" found probable cause to exist. The magistrate judge's order, however, was based on an *ex parte* proceeding, so Mayle was unable to rebut the government's proof at that time. Moreover, unlike the cases previously cited, Mayle has never been permitted to argue probable cause. Significantly, the government has not cited one case in which the issue of probable cause was held to be moot based on a magistrate judge's *ex parte* order.

The district court erroneously equated the magistrate judge's inquiry into whether there is probable cause to support an arrest warrant and the inquiry undertaken in determining whether there is probable cause to forfeit defendant property. The First Circuit has explained:

[T]he probable cause determination of the magistrate and that in the complaint address two different questions: the first, whether the government has probable cause to hold the property until it can file a complaint against it, includes considerations of the need to protect the government's interest, and comes at an earlier stage in the proceedings; the second, whether the facts in the government's possession support an inference that the property is subject to forfeiture, must be more narrowly tailored to precisely identify the

---

2. Mayle cites the recent Supreme Court case *United States v. James Daniel Good Real Property,* — U.S. —, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), in support of his claim that the district court's determination of probable cause was in error. We need not address the merits of this argument, for we find in favor of Mayle as to this issue on other grounds.

portion of the property the government can keep.

*United States v. Pole No. 3172, Hopkinton,* 852 F.2d 636, 639 (1st Cir.1988).

In *United States v. Parcels of Real Property,* 795 F.Supp. 1225, 1231–32 (D. Mass. 1992), *aff'd,* 9 F.3d 1000 (1st Cir.1993), the district court reasoned:

> Thus, in issuing the *ex parte* warrant and monition on June 1, 1989, [the court] certified that the government had, upon the evidence available at that time, shown probable cause adequate to justify holding the property pending the dispositive evidentiary hearing. In other words, [the court] found that the government had made an adequate preliminary showing that the property was connected to illegal activity and thus forfeitable.

> At the trial itself, [the court] applied the scheme of shifting burdens.... Thus, probable cause at the forfeiture trial is used to measure all of the evidence ultimately adduced for final disposition of a forfeiture action. It does not function to evaluate the necessarily preliminary and pretermitted showing pending trial.

■ Whether it be at trial, on motion for summary judgment, or at some other hearing, evidence obtained both prior to the seizure and after the seizure is evaluated to determine whether there is sufficient probable cause for forfeiture. *See, e.g., $67,220.00 in U.S. Currency,* 957 F.2d at 284 ("[A] district court must assess probable cause at the time of the forfeiture hearing."); *Jones v. U.S. Drug Enforcement Admin.,* 819 F.Supp. 698 (M.D.Tenn.1993) (noting that a court must consider the entire record in determining whether the government has met its burden of establishing probable cause); *United States v. Certain Real Property,* 806 F.Supp. 681 (S.D. Ohio 1992) (finding the government's affidavit in support of forfeiture, the claimant's admission and guilty plea established probable cause). The magistrate judge, on the other hand, makes an initial determination of probable cause without the benefit of all the evidence. If a district court could simply adopt a magistrate judge's *ex parte* finding of probable cause, a claimant would be denied any meaningful opportunity to challenge this finding.[3] Accordingly, the district court's conclusion that the issue of probable cause was moot was in error.[4]

Since our determination as to the probable cause issue will result in a retrial, it is provident to address certain issues that are capable of arising again. We will first consider Mayle's contention that the district court erred in refusing to grant his pretrial motion to dismiss, or, in the alternative, to stay in light of the pending criminal proceedings against him.[5] The denial of this motion,

---

**3.** If a claimant makes no challenge to this initial determination, however, it can stand as the determination of probable cause.

**4.** The government maintains that even if we were to rule that the district court's "decision not to conduct an adversarial hearing with respect to probable cause was error, ... any error was harmless since the record below demonstrates probable cause was established." (Government's Brief at 15). In support of this contention, the government cites *United States v. Solivan,* 937 F.2d 1146 (6th Cir.1991).

While *Solivan* stands for the proposition that harmless error analysis depends on the circumstances of the particular case, it is of no help to the government. In *Solivan,* this court reviewed *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and found that even constitutional errors "do not require automatic reversal of a conviction if the error can be classified as harmless." 937 F.2d at 1155. The errors

involved in *Solivan,* however, resulted "from the admission of highly prejudicial evidence or comment[.]" *Id.* Here, the error is not one of prejudicial evidence or comment, but is the district court's failure to give Mayle an opportunity to address the probable cause issue. The government has not cited one case in which an error of this magnitude was found to be "harmless." Accordingly, we find no merit to the government's position.

**5.** At the time of the forfeiture proceeding, there was a federal grand jury meeting in West Virginia concerning illegal conduct that allegedly took place at the location identified as Box 137–B. Mayle also informed the district court of pending state criminal prosecutions in the Washington County Court of Common Pleas that were set for November 9, 1992, and which also involved alleged illegal activities at this same location.

Mayle maintains, forced him to choose between defending his property and asserting his Fifth Amendment privilege against self-incrimination.

If this were the only issue before us at this time, we would deny relief because Mayle failed to articulate with precision how he would have been prejudiced if the civil action went forward while the criminal actions were pending in state court. *See United States v. Certain Real Property 566 Hendrickson Blvd., Clawson, Oakland County, Mich.,* 986 F.2d 990 (6th Cir.1993); *United States v. Certain Real Property, Commonly Known as 6250 Ledge Road, Egg Harbor, Wisc.,* 943 F.2d 721 (7th Cir.1991). Nevertheless, we are not in a position to rule on this issue because we do not know what the status of the additional criminal matters will be at the time this case goes back for retrial. In the event that criminal proceedings implicating the defendant property are still unresolved, Mayle is not precluded on remand from again presenting this claim.

Mayle contends that he suffered a substantial penalty when the district court instructed the jury that it could draw "an Adverse Inference from the Assertion of his Fifth Amendment Rights." (Mayle's Brief at 21). More specifically, the court instructed the jury as follows: "The law does not require the claimant in a forfeiture proceeding to testify on his own behalf. You may draw whatever inference reason and common sense permit from the failure of the claimant to testify in this case."

The government avers that, contrary to what Mayle states, the court did not instruct the jury that it could draw an adverse inference from Mayle's decision not to testify; rather, the court instructed the jury it could draw whatever inference it chose. While the government's characterization of the court's instruction is correct, this does not resolve the issue. The instruction unnecessarily drew the jurors' attention to Mayle's assertion of his Fifth Amendment privilege, and this might have improperly influenced the jury's verdict. Accordingly, the district court's instruction was in error if the instruction, when reviewed as a whole, was prejudicial. *Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 72–73 (6th Cir.1990).

The crux of the government's position is that because this was a *civil* forfeiture proceeding, the instruction was not erroneous. Citing a series of cases that stand for the proposition that in civil proceedings the law permits the drawing of an adverse inference against a party who elects not to testify, *see Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a *party to a civil cause.*'") (citation omitted), the government argues that the instruction does no more than accurately reflect governing law. We disagree.

The government's attempt to equate forfeiture proceedings with ordinary civil proceedings is misguided. The Supreme Court recently reviewed the history of civil forfeiture actions and found them to be a form of punishment subject to the limitations of the Eighth Amendment's Excessive Fines Clause. *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). Similarly, this court previously observed that "the forfeiture penalty is closely related to a criminal sanction[.]" *United States v. U.S. Currency,* 626 F.2d 11, 15 (6th Cir.) (citation omitted), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980). These cases undercut the government's contention that we should review this forfeiture proceeding in the same light as we would review a traditional civil proceeding.

Nevertheless, since this case must be retried, it is not necessary for us to determine whether the district court committed reversible error in giving the contested instruction; rather, we conclude that the best way to resolve this issue is to instruct the district court not to give this instruction again on retrial. We realize this issue may not arise, since Mayle may elect to testify at retrial.

Mayle next argues the district court's holding must be reversed because the jury was

told the government had already established probable cause to subject the defendant property to forfeiture. According to Mayle, these statements were highly prejudicial and inaccurate. Further, because probable cause is a question of law for the court, Mayle maintains the jury should not have heard *anything* concerning probable cause.

Having already found that the district court erred in determining the government had met its burden of establishing probable cause, we need not address this issue further.

■ Mayle's next assignment of error stems from the voir dire conducted below. The district court, without prior notice to Mayle or his attorney, consolidated the voir dire only for the Box 137–B and the Box 198 proceeding. In the Box 198 proceeding, the claimants were Mayle's ex-wife and son. Both cases were civil forfeiture actions involving real property in Cutler, Ohio, all of the claimants had the same last name, and counsel for the Mayles in both cases was the same. According to Mayle, this procedure caused prospective jurors to hear evidence on both cases, and "[t]hus it is highly probable that the jurors used this extraneous information, in addition to the evidence brought before them at the trial, to arrive at their final decision." (Mayle's Brief at 43).

■ Courts previously have been asked to determine whether it was a *per se* violation of a party's right to a fair trial when a juror in the case on appeal previously served in a case involving the same witnesses or parties. The primary concern in such situations is that the juror will rely on information obtained outside the immediate trial in reaching a decision. When reviewing alleged errors arising from this type of fact pattern, courts agree that a new trial should not be ordered absent proof of actual bias. *United States v. Stevens,* 444 F.2d 630 (6th Cir.1971). For instance, one court has stated that the "selection of jurors from panels who may have previously participated in voir dire, even in a similar case, is not error, unless actual bias is shown." *United States v. Dion,* 762 F.2d 674, 693 (8th Cir.1985) (citations omitted), *rev'd in part on other grounds,* 476 U.S. 734,

106 S.Ct. 2216, 90 L.Ed.2d 767 (1986). As Mayle concedes, "[m]ost courts addressing this issue have held that although they do not condone such procedures, reversal is probably not warranted unless a showing of prejudice or bias is made." (Mayle's Brief at 44).

Here, Mayle has not made the requisite showing of prejudice. At no point in the voir dire was any evidence presented from either case and Mayle has not articulated any information to which the jurors were exposed that could have created such a prejudice. Nevertheless, although we conclude that Mayle has not shown prejudice, since we are sending the case back and the risk of prejudice remains, we would counsel the court to conduct a separate voir dire in each case on remand.

Mayle's final assignment of error concerns the district court's admission of certain evidence pertaining to Mayle's knowledge of illegal activities at Box 198. According to Mayle, because his case involved the Box 137–B property, any information of activities that occurred at Box 198 was irrelevant, and the admission of this evidence created a substantial danger that the jury would reject his innocent ownership defense because of his knowledge of activities occurring elsewhere.

■ A trial court's decision on the admission of evidence of this nature is reviewed pursuant to an abuse of discretion standard. *Schrand v. Federal Pacific Elec. Co.,* 851 F.2d 152, 157 (6th Cir.1988). The admissibility of relevant, potentially prejudicial evidence under Rule 403 is placed within the sound discretion of the trial court. *United States v. Brady,* 595 F.2d 359, 361 (6th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979). After reviewing the record, we cannot say the district court abused its discretion in admitting the evidence of illegal activities at Box 198. Federal Rules of Evidence 401 states that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 403 limits the introduction of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion

of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The evidence pertaining to Box 198 is clearly relevant. The same day that the search warrant was executed at Box 137–B, a search warrant was executed at the Box 198 property, which is only a short distance from Box 137–B. John Mayle was discovered at Box 198, as were numerous items useful for narcotics trafficking. Such information certainly makes it more likely that John Mayle knew of the illegal activities that took place at the defendant property. As the jury interrogatories make clear, Mayle's knowledge was the only issue being contested. Moreover, Mayle has not proven how any dangers of prejudice substantially outweigh the probative value of this evidence. Therefore, we find this last assertion of error to be without merit.

**REVERSED and REMANDED.**