**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Donald G. FORD, Defendant–Appellee.**

No. 01–5781.

United States Court of Appeals, Sixth Circuit.

May 22, 2003.

Before DAUGHTREY and COLE, Circuit Judges; and SARGUS, District Judge.*

## OPINION

COLE, Circuit Judge.

The United States appeals the district court's award to defendant Donald G. Ford of interest accrued on $926,202.53 in funds seized by the government and held pending Ford's criminal trial, but later found by the jury not to have been directly traceable to illegal activity. Specifically, the district court ordered the United States to credit, against fines and penalties owed by Ford, the interest accrued on this sum during the period between the date the funds were seized and the date of the judgment in Ford's criminal case. The United States claims that sovereign immunity bars this award of interest and, to the extent that sovereign immunity is not a

* The Honorable Edmund A. Sargus, United States District Court for the Southern District of Ohio, sitting by designation.

bar, such an award is otherwise improper in this case. For the reasons described below, we VACATE the district court's award of interest and REMAND this case for further proceedings.

## I. BACKGROUND

In August 1992, the Internal Revenue Service ("IRS") seized cash and certain bank accounts, belonging to either Donald G. Ford ("Ford") or Arcade Plaza, Inc., a bingo operation run by Ford, totaling $1,349,694.10. This sum remains in the possession of the IRS. Ford was later indicted on thirty-six counts relating to illegal gambling and money laundering in connection with these and other funds.

In November 1996, a jury found Ford guilty on numerous charges of illegal gambling, money laundering, and engaging in financial transactions representing the proceeds of unlawful activity. The jury also acquitted Ford of certain conduct. Ford was found guilty of illegal activity that involved a total of $1,137,348.63, but was acquitted of conduct alleged to involve $806,542.33.

In October 1997, Ford was sentenced to serve 108 months in prison to be followed by a term of supervised release of three years. Ford was also ordered to pay an assessment of $1,450.00 and a criminal fine of $705,478.30.

On November 4, 1997, the district court issued a First Final Order of Forfeiture, ordering that Ford forfeit to the United States $1,137,348.63 in "property ... involved in money laundering, or ... traceable to money laundering." This amount included $194,238.68 in seized funds that had been deemed by the jury to be traceable to illegal activity. An additional

$943,109.95 in non-traceable funds was found to be criminally forfeitable.[2] The district court further ordered that the IRS, acting as a custodian, hold $926,202.53 in seized funds that the jury concluded were not directly traceable to specified unlawful activity as assets that would likely become forfeitable, subject to third-party claims, as substitute assets.

On June 31, 1998, Ford moved for assessment and crediting of interest on seized money that was not ordered forfeited. Specifically, Ford sought to have credited toward monies he owed in criminal fines the interest accrued on the $926,202.53 in non-traceable funds. Because Ford's appeal of his sentence was pending in this Court at that time, the district court did not have jurisdiction to address Ford's motion. Accordingly, in July 2000, Ford renewed and supplemented his motion for assessment and crediting of interest and the government responded.

On November 7, 2000, the district court allowed Ford's renewed motion for assessment and crediting of interest, ordering the government to credit the interest accrued on the $926,202.53 between the date of seizure and the date of judgment against the amounts Ford owed in criminal penalties. In particular, the district court stated:

It has been established by the jury that during the period from seizure to judgment the United States held $926,202.53 in non-tainted funds which it could not then lawfully restrain as substitute assets. See, *United States v. Fields* [sic], 62 F3d [sic] 246 (8th Cir.1995); *United States v. Floyd*, 992 F.2d 498 (5th Cir. 1993). But for his outstanding obligations under the gambling and money

---

**2.** The district court later adjusted the amount of non-traceable sums to $889,226.30, to account for the government's double counting of amounts at issue in multiple counts of the Indictment.

laundering judgment, Ford would be entitled to a return of those funds with interest under the authority of *United States v. $515,060.42 in United States Currency,* 152 F.3d 491 (6th Cir. 1998).... Until the judgment was entered on the gambling and money laundering verdict the United States held Ford's non-tainted funds without proper claim to the property. It must account for interest on those funds during that period of time, despite the fact that the same funds may ultimately be forfeited in satisfaction of other obligations. The funds remained the property of Ford prior to entry of judgment, and the United States had no right to retain them. The Judgment in a Criminal case, entered November 4, 1997, then formed the basis to restrain substitute assets to satisfy the order of forfeiture. Accordingly, interest should be assessed at the legal rate from the date of seizure until November 4, 1997, and the sum should be credited as part of the res no matter the final disposition of the funds.

The United States moved for reconsideration, claiming: (1) that it had probable cause to seize the assets and did so under the theory that they were tainted and, thus, it did not retain the assets in question under a substitute assets theory prior to trial; (2) that the interest to be credited should not include interest accrued after the jury verdict but prior to the judgment, which was not issued until nearly a year later; and (3) that Ford's recovery should be barred because he had unclean hands, sat on his rights, and would be receiving a windfall. Ford opposed the motion for reconsideration.

On May 29, 2001, the district court denied the government's motion to reconsider, concluding that it was undisputed that there existed probable cause to seize the funds and that the seized assets deemed non-tainted may be forfeited as substitute assets, although they could not have been restrained prior to trial on that theory. However, the court concluded that these issues were not material to the its decision to award interest. The district court also rejected the argument that interest accrued prior to the jury verdict, but not the judgment, should be credited, reiterating its earlier statement that "[u]ntil the judgment was entered ... the United States held Ford's non-tainted funds without proper claim to the property." Specifically, the district court found that the assets in question did not become eligible to be retained as substitute assets until the date of judgment. The district court also rejected the government's arguments that Ford could not recover in equity because of his refusal to provide the court with financial information and because such recovery would be a windfall. This appeal followed.

## II. ANALYSIS

The government appeals the district court's November 7, 2000 order awarding Ford interest, and the district court's May 29, 2001 denial of the government's motion to reconsider the November 7, 2000 decision. The government argues, first, that sovereign immunity and the concomitant "no-interest" rule bar any award of interest against the government. Second, the government argues that, even if disgorgement of interest is sometimes appropriate, the district court's order of disgorgement in this case was inappropriate. Although we reject the government's first argument, we are persuaded that the district court's award of interest to Ford was premature, and, therefore, will vacate the award and remand this matter for further proceedings.

## A. Sovereign Immunity

Whether the government enjoys sovereign immunity with respect to a particular matter is a question of law that this Court reviews *de novo*. *United States v. Kentucky*, 252 F.3d 816, 825 (6th Cir.2001). We reject the government's argument that sovereign immunity and the "no interest" rule of *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) always bar awards of interest in forfeiture cases where seized property is returned to its owner as not forfeitable.[3] This Court has previously held that the government may be required to disgorge interest received on funds or property lawfully seized as potentially forfeitable where it is later determined that the government had no proper claim to the funds or property. *United States v. $515,060.42 in United States Currency*, 152 F.3d 491, 504 (6th Cir.1998) (concluding that "the Government may not always be permitted to profit from the seizure of property which is ultimately returned to the owner").[4]

This Court's decision in *$515,060.42* arose out of a civil forfeiture proceeding instituted by the government against funds seized and held as evidence in connection with a criminal proceeding relating to gambling and illegal bingo operations. *Id.*

Ultimately, the civil forfeiture action was dismissed on statute of limitations grounds and, as a result, the district court ordered the government to return to the claimants $515,060.42 in seized currency plus interest. *Id.* at 497. The government appealed to this Court, challenging the award of interest as barred by sovereign immunity and *Shaw's* "no-interest" rule.

We framed the issue as follows:

The Government sometimes seizes property for purposes of forfeiture and is later found, for whatever reason, to have no proper claim to the property. When the property is returned to its owner, the question arises, as it did in this case, as to what extent an owner may recover the Government's profit from the use of the seized property.

*Id.* at 504. We expressly approved of the Ninth Circuit's analysis in *United States v. $277,000 U.S. Currency*, 69 F.3d 1491, 1493 (9th Cir.1995), where that court affirmed the award of interest in a civil forfeiture action. There, the Ninth Circuit had concluded that where the government was unsuccessful in obtaining forfeiture of currency that it had seized, "to the extent that the government profited from the use of the property, ... it must disgorge [interest] earnings along with the property

---

**3.** In *Shaw*, an employment discrimination case, the Supreme Court held that "interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest." 478 U.S. at 311, 106 S.Ct. 2957.

**4.** The issue of whether interest may be awarded under the circumstances presented in *$515,060.42* is the subject of a circuit split. *Compare $515,060.42*, 152 F.3d 491, 504 (permitting disgorgement of interest); *United States v. $277,000 U.S. Currency*, 69 F.3d 1491, 1493 (9th Cir.1995) (same); *and United States v. 1461 West 42nd St., Hialeah, Fl.*, 251 F.3d 1329, 1338 (11th Cir.2001) (suggesting it would follow *$515,060.42* ), *with Larson v. United States*, 274 F.3d 643, 647 (1st Cir.

2001) (finding interest barred by sovereign immunity); *United States v. $30,006.25*, 236 F.3d 610, 612 (10th Cir.2000) (same); *United States v. $7,990.00 in U.S. Currency*, 170 F.3d 843 (8th Cir.1999), *cert. dismissed*, 528 U.S. 1041, 120 S.Ct. 577, 145 L.Ed.2d 449 (same); *Ikelionwu v. United States*, 150 F.3d 233, 239 (2d Cir.1998) (same). However, because Congress has chosen to amend the civil forfeiture statute, this split is of diminishing importance. *See Smith v. Principi*, 281 F.3d 1384, 1388 n. 2 (Fed.Cir.2002) (describing the circuit split to be "of diminishing significance, as Congress has recently amended the forfeiture statute to allow prospectively the recovery of interest").

itself." *$277,000 U.S. Currency*, 69 F.3d 1493. Likewise, this Court concluded that "the interest was not really typical pre-judgment interest, but an aspect of the seized *res*, and thus the existing sovereignty bar to an award of pre-judgment interest did not enter the picture." *$515,060.42*, 152 F.3d at 504.

■ The *$515,060.42* Court focused on the fact that the government is not an owner of seized property until the time at which forfeiture is decreed. *Id.* (citing *United States v.1980 Lear Jet. Model 35A, Serial Number 277*, 38 F.3d 398, 402 (9th Cir.1994); *United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 124, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993)). Thus, to the extent that it is determined that property seized and held by the government pending a judgment of forfeiture is ultimately adjudged not forfeitable, and, therefore, is returnable to its rightful owner, it is appropriate for the government to disgorge interest it constructively or actually received on the property during the period commencing on the date of seizure and ending on the date that the property was deemed not forfeitable. *Id.* at 504–05. Under this theory, the government is not

being asked to pay interest, but rather, to disgorge benefits received from property in which it never actually held a proprietary interest.

Because *$515,060.42* clearly permits ordering the government to disgorge interest on seized property later deemed returnable, we reject the government's argument that sovereign immunity always bars such an award. To the extent that the United States asks this panel to overrule *$515,060.42*, this request must too be rejected. It is well-established that one panel of this Court cannot, absent intervening Supreme Court precedent, overrule another panel. *See United States v. Riddle*, 249 F.3d 529, 539 (6th Cir.2001); *Timmer v. Mich. Dep't of Corr.*, 104 F.3d 833, 839 (6th Cir.1997). No such intervening precedent would permit us to overrule *$515,060.42* at this time.[5]

### B. Disgorgement Theory

The government argues that Ford cannot prevail because the seizures and retention of the assets in this case were lawful. Moreover, the government claims that disgorgement is an equitable theory upon

---

5. The government argues that the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106–185, § 4(a), 114 Stat. 202, 211–13 (2000) (codified at 28 U.S.C. § 2465(b)(1)(C)), abrogated this Court's decision in *$515,060.42*. Among other things, CAFRA amended the civil forfeiture statute to provide for payment by the government of actual or imputed interest on returned currency, negotiable instruments, and proceeds where a claimant "substantially prevails." 28 U.S.C. § 2465(b)(1)(C). We note that because this is not a civil forfeiture action commenced after August 2000, CAFRA is not implicated. *See* Pub.L. No. 106–185, § 21. Nevertheless, we are not persuaded by the government's argument that *$515,060.42* has been abrogated by CAFRA. A review of the statute and its legislative history reveals no mention of sovereign immunity, and supports the conclusion that CAFRA ratified the outcome, if not the

rationale, of this Court's decision in $515,060.42. *See* H.R. REP. 106–192, § 5 (1999) (explaining that under the amendment "the United States shall disgorge to the claimant any funds representing interest actually paid to the United States from the date of seizure or arrest of the property that result from the investment of the property in an interest-bearing account or instrument and for any period during which no interest is actually paid, an imputed amount of interest that such currency, instruments, or proceeds would have earned at the rate described in section 1961"); 145 CONG. REC. H4854–02 (daily ed. June 24, 1999) (statement of Rep. Conyers) ("This provision prevents the government from gaining a windfall on improperly seized property and puts the property owner in the position he or she would have been if the property had not been seized in the first instance.").

which Ford cannot prevail because he: (a) failed to raise his claim for wrongful retention in a timely fashion, (b) has unclean hands as a result of his refusal to make customary financial disclosures, and (c) failed to keep his assets in interest-bearing accounts prior to seizure. Third, the government argues that Ford was required to file a motion pursuant to Federal Rule of Criminal Procedure 41 seeking return of the interest at issue here. Finally, the government argues that the award of interest to Ford was premature. We reject the government's first three arguments, but find that the award in this case was indeed premature.

### 1. Lawful Seizure and Retention

■ As the district court concluded, it is of no consequence that the original seizures in this case were lawful. To the extent the funds were held as tainted funds, and not for some alternative purpose, the government was, up to the time of the entry of judgment of acquittal, holding funds to which, as it turned out, it had no proper claim.

It is undisputed that the initial seizures of the $926,202.53 were proper insofar as they were supported by search warrants, seizure warrants, the indictments, and, in some instances, warrants of arrest *in rem.* However, the fact that there was probable cause for these seizures does not necessarily mean that the assets seized are forfeitable. *See United States v. One 1974 Learjet 24D, Serial Number 24D–290, Mexican Registration, XA–RMF,* 191 F.3d 668, 673 (6th Cir.1999) (explaining that probable

cause to seize should not be conflated with probable cause to forfeit because "the . . . determinations involve different queries [and, perhaps,] different evidence.").

The government's pre-trial retention of assets believed to be tainted and, therefore, forfeitable, is permissible.[6] However, at the time the judgment acquitting Ford in part was issued, it became clear that the government had held the $926,202.53 in assets permissibly, but without any proprietary interest therein, as these assets proved not to have been tainted. Although, at the time of judgment, these same assets became retainable and potentially forfeitable as substitute assets, the government could not have retained these assets *qua* substitute assets prior to trial. *See* 21 U.S.C. § 853(p); *United States v. Field,* 62 F.3d 246, 247 (8th Cir.1995); *Ripinsky,* 20 F.3d at 362. 365: *Floyd,* 992 F.2d at 501 (holding that the government lacks statutory authority to restrain untainted assets prior to trial in context of 18 U.S.C. § 982 and 21 U.S.C. § 853). Of course, the government is not barred from retaining previously seized, but non-tainted, assets *after* trial as substitute assets. This fact, though, does not create a proprietary interest in the assets during the period between seizure and the judgment of acquittal.

Because the seizures and retention were lawful, the United States argues that the district court improperly viewed the government as a wrongdoer, justifying its equitable award to Ford. The government analogizes to criminal arrest, arguing that if there was probable cause to arrest some-

---

**6.** 18 U.S.C. § 982(a)(1) authorizes the government to seize forfeitable assets upon conviction for money laundering offenses. *See United States v. Floyd,* 992 F.2d 498, 501 n. 3 (5th Cir.1993). Criminal forfeitures pursuant to § 982 are governed by 21 U.S.C. § 853. *See* 18 U.S.C. § 982(b)(1). Under § 853, the government may obtain a protective order to restrain forfeitable assets prior to conviction if there is a substantial probability that the government will prevail, it appears that the defendant may otherwise transfer or conceal those assets by the time of conviction, and the balance of the hardships favors retention. 21 U.S.C. § 853(e); *cf. United States v. Ripinsky,* 20 F.3d 359, 361–62 (9th Cir.1994).

one the fact that they are later acquitted will not necessarily render the arrest and detention improper. However, the government's argument ultimately is unpersuasive. Here, the question is not whether the seizure and retention of the assets was permissible. It is clear that both were permissible. Rather, the question is whether the United States had a proprietary claim to the assets during the period from seizure until judgment. Under the law of this circuit, we find that the government had no such proprietary claim. *See $515,060.42*, 152 F.3d at 504.

### 2. Equity

"Restitution and disgorgement are part of courts' traditional equitable authority." *United States v. Universal Servs. Mgmt. Inc.*, 191 F.3d 750, 760 (6th Cir.1999). "Absent a clear command by Congress that a statute providing for equitable relief excludes certain forms of such relief, this court will presume the full scope of equitable powers may be exercised by the courts." *Id.* at 761. "Disgorgement ... removes ill-gotten gain by forcing surrender of profits." *Id.* at 763. This Court "reviews a district court's decision on disgorgement for abuse of discretion." *SEC v. Johnston*, 143 F.3d 260, 262 (6th Cir. 1998). "Abuse of discretion [requires] 'a definite and firm conviction that the trial court committed a clear error of judgment.'" *Id.*

■ The United States argues that Ford cannot recover in equity because he "sat on his rights," has unclean hands, and would receive a windfall. We find each of these arguments unpersuasive. Ford does not challenge the restraint of the assets; he simply seeks the return of interest on assets found to have been improperly retained—only during the period of their improper retention. Thus, as the district court explained, Ford did not "sleep" on

his rights since the filing of the Indictment in this case, as the government suggests. Rather, Ford only secured the right to obtain interest on the $926.202.53 when the judgment was entered in November 1997. Second, Ford is not required to facilitate the forfeiture of his property. Thus, his refusal to voluntarily make financial disclosures has no bearing on this Court's decision to award interest, although it may subject Ford to other penalties. Third, the fact that Ford had not placed the $926,202.53 in interest-bearing accounts prior to its seizure, even if true, does not support a finding permitting the government to receive a windfall on property that it held without proprietary interest.

### 3. Federal Rule of Criminal Procedure 41

■ The government argues that Ford should have filed a motion pursuant to Federal Rule of Criminal Procedure 41 seeking return of the interest. Federal Rule of Criminal Procedure 41(g), formerly Rule 41(e), provides that a person aggrieved by an unlawful search and seizure or by the deprivation of property may seek return of the property on the ground that they are entitled to lawful possession of the property. FED. R.CRIM. P. 41(g). Rule 41 does not provide specifically for the return of interest along with the return of seized property. In fact, some courts have found that Rule 41 must be strictly construed against a finding that the rule waives sovereign immunity. *See, e.g., Pena v. United States*, 157 F.3d 984, 986 (5th Cir.1998) (explaining that Rule 41 does not authorize the payment of damages). However, under *$515,060.42*, it is appropriate to view the return of interest on improperly seized property as the disgorgement of a benefit improperly obtained by the government, rather than the payment of damages. 152 F.3d at 504.

Had Ford filed a Rule 41 motion seeking return of the $926,202.53 after the judgment was rendered in his criminal case, that motion would have been treated as a civil action in equity. *See United States v. Dusenbery*, 201 F.3d 763, 768 (6th Cir.) ("Rule 41(e) proceedings are equitable in nature if criminal proceedings are no longer pending." (citing *United States v. Duncan*, 918 F.2d 647, 654 (6th Cir.1990), *United States v. Marolf*, 173 F.3d 1213, 1216 (9th Cir.1999))), *cert. denied*, 531 U.S. 925, 121 S.Ct. 301, 148 L.Ed.2d 242 (2000). Thus, the district court did not err in treating Ford's motion for assessment and crediting of interest as a motion in equity.

4. Interest Award on Returnable Property

■ The law of this circuit supports the return of interest under circumstances similar to those presented in this case. Under *$515,060.42*, we look to whether the government had a proper claim to the property deemed not forfeitable. 152 F.3d at 504. If the government had no proper claim, it must return the property to its rightful owner. *Id.* The returnable property includes the government's profit from the use of the seized property during the period in which the property was improperly held, which includes interest accrued during this period. *Id.*

Unlike *$515,060.42*, the present case is not a civil forfeiture action. We are cognizant of the significant distinctions between civil and criminal forfeiture proceedings. *See United States v. Corrado*, 286 F.3d 934, 937, 939 (6th Cir.2002) (explaining that civil forfeiture does not constitute punishment, while "[a] criminal forfeiture award is part of the defendant's sentence, not part of the substantive offense of conviction."). Acquittal in an *in personam* criminal forfeiture proceeding does not conclusively determine whether the partic-

ular property will ultimately be forfeited. This is in part because "[a]cquittal in a criminal forfeiture proceeding does not bar a subsequent civil forfeiture proceeding against the same illegally smuggled goods." *Id.* at 939; *see also United States v. Ursery*, 518 U.S. 267, 274, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). Because criminal forfeiture proceedings require a higher standard of proof than do civil forfeiture proceedings, an acquittal in the former does not bar the latter. *See, e.g., United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 359, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984).

In contrast, a civil forfeiture action is an action *in rem* to hold guilty, by reliance on a legal fiction, property, condemning its involvement in wrongdoing; thus, liability in such an action attaches to the property itself. *See United States v. O'Dell*, 247 F.3d 655, 680 (6th Cir.2001). Accordingly, acquittal in such a proceeding requires the return of property to its proper owner. It has long been clear that a judgment *in rem* denying forfeiture, unlike an acquittal in a criminal proceeding, is conclusive evidence that there is no justifiable cause for a forfeiture. *See Apollon*, 9 Wheat. 362, 22 U.S. 362, 367, 6 L.Ed. 111 (1824) ("The question [of whether there was justifiable cause of seizure] has been already decided in the proceedings *in rem*, and the decree of acquittal, not having been appealed from with effect, is conclusive evidence in every inquiry before every other tribunal, that there was no such cause.").

Here, the district court ordered the government to pay Ford interest in the original criminal proceeding. Nothing about *$515,060.42* suggests that its rationale only applies in civil forfeiture cases. The essential holding of *$515,060.42* requires that at the time property is deemed not forfeitable and, therefore, returnable to its proper owner, the government must re-

turn any interest, actual or imputed, along with the property–the *res. $515,060.42,* 152 F.3d at 504. However, while a determination that property is not forfeitable in a civil forfeiture proceeding would conclusively render the property returnable to the successful civil claimant, it is not clear that the property at issue here is or ever will be returnable to Ford.

To the extent that the judgment finding the $926,202.53 not forfeitable as tainted proceeds of unlawful activity demonstrated that the government previously had not held any proprietary right in the property in question, the United States may be required to disgorge benefits it received on this sum between the date of seizure and the date of judgment to the rightful owner of these assets. These benefits would include interest accrued on this amount. Generally, interest accrued on a returnable *res* during this time period would simply follow the *res.* We are not persuaded, however, that the *res* need actually be returned to require the government to disgorge interest. The rationale that the government should not reap benefits from the money of its citizens applies with equal force whether the *res* is forfeitable under another theory or not. Nevertheless, we find that no interest award could properly have been made to Ford absent a determination that he was indeed the proper owner of the $926,202.53 during the period of its retention by the government. Insofar as no such determination was made and, given the potential rights of third parties to the *res* in this case, we find that the district court's order awarding interest in this case was premature.

However, to the extent that the *res* is found to have belonged to Ford during the relevant period, the interest constructively or actually earned by the United States on this sum should be disgorged to him. Insofar as Ford is not adjudicated the rightful owner of the $926,202.53, the interest cannot properly be credited against Ford's debts to the government. Of course, any third party with rights to this sum would have to assert those rights in a civil forfeiture action and could not recover in this case. Thus, we remand this matter for a determination of whether Ford, rather than some third party, was the rightful owner of this currency during the relevant period before ordering the return of the interest accrued on the sum to Ford. To the extent that a separate civil forfeiture action, or the ancillary proceedings that the government represented to this Court have been stayed during the pendency of this appeal, constitute the proper forum in which to determine the rightful owner of the $926,202.53, it may be appropriate to await the outcome of such proceedings before ordering any disgorgement of interest. Further, if, upon remand, the district court finds the award of interest to Ford appropriate, the district court should also make specific findings as to whether the assets in question were held by the government in interest-bearing accounts, to assist in the specific computation of interest.[7]

### III. CONCLUSION

For the reasons stated above, we VACATE the district court's orders dated November 7, 2000 and May 29, 2001, awarding interest to Ford, and REMAND

---

7. The amount of interest has not been put directly at issue in this appeal. Nevertheless, where seized funds did not earn interest, these funds "'should be considered as constructively earning interest at the government's alternative borrowing rate at all times' until a judgment is rendered." *$515,060.42,* 152 F.3d at 505 (citing *$277,000 U.S. Currency,* 69 F.3d at 1496). Where the funds in question did actually earn interest, the actual amount of interest earned must be disgorged. *Id.* at 505–06.

this case for further proceedings consistent with this opinion.